540 A.2d 482

**The GOODYEAR TIRE & RUBBER COMPANY**

v.

**Patricia A. RUBY.**

**No. 23, Sept. Term, 1986.**

Court of Appeals of Maryland.

April 22, 1988.

Frank B. Haskell III and Kevin C. Gale (Haskell & Duley, on the brief), Upper Marlboro, for appellant.

Richard V. Waldron, Riverdale, for appellee.

Edward S. Digges, Jr., Jack L. Harvey, Annapolis, for amici curiae, Motor Vehicle Mfrs. Ass'n of U.S., Inc., and Product Liability Advisory Council, Inc.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH \* and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

McAULIFFE, Judge.

Patricia Ruby's attempt to place a lien against her former husband's earnings in order to collect child support and

---

\* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

attorney's fees previously ordered by a Maryland court has generated two separate questions. The first is whether the use of first class mail was sufficient to afford adequate notice of the proceedings to the alleged debtor, a resident of Texas. The second is whether the non-resident employer, The Goodyear Tire and Rubber Company (Goodyear), has sufficient contacts with this State to justify the exercise of judicial jurisdiction over it in a matter wholly unrelated to those contacts.

## I.

Patricia and Robert Ruby were married in Maryland in 1970, where they lived together until their separation in 1978. On July 23, 1984, Mrs. Ruby filed a complaint in the Circuit Court for Prince George's County, seeking a divorce, custody of their two minor children, child support, and attorney's fees. She alleged that she and the children continued to live in Maryland, but that her husband had moved to 2300 Timber Lane in Grapevine, Texas, and was employed by Goodyear in that state. Mr. Ruby was personally served with original process in Maryland on the same day the suit was filed. He did not file an answer or appearance in the case, and an order of default was entered on January 8, 1985. In accordance with Maryland Rule 2–613, and pursuant to a certification of the Defendant's address furnished by the Plaintiff, the clerk mailed a notice of default to Mr. Ruby at the Timber Lane address in Grapevine, Texas.

Mr. Ruby did not reply to the notice, and the case proceeded to an ex parte hearing before a master. On April 18, 1985, a final judgment was entered granting Mrs. Ruby's prayers for an absolute divorce and custody of the children, and ordering Mr. Ruby to pay $400 per month for child support accounting from August 1, 1984, and $500 for attorney's fees. The clerk mailed a copy of the final judgment to Mr. Ruby on the day it was entered. There is no indication in the record that it was not delivered.

Two months later, alleging that Mr. Ruby had not made any payments, Mrs. Ruby filed a verified petition for a lien on the earnings of her former husband, pursuant to §§ 10–120 thru 10–126 of the Family Law Article, Maryland Code (1984) [1]. The circuit court issued an order directing that a hearing be held on July 19, 1985, and further directing that copies of the order, the petition, and the proposed lien order be served upon Mr. Ruby on or before July 5, 1985. Mrs. Ruby's attorney thereafter filed a Certificate of Service in the following form:

I hereby certify that on the 14th day of June, 1985, a copy of the Show Cause Order dated June 14, 1985, with a copy of the Lien Order attached and a copy of the Petition for the requested lien were mailed, postage prepaid, to the Defendant, Robert A. Ruby, 2300 Timber Lane, Apt. 208, Grapevine, Texas; that the envelope had my return address; that said envelope has not been returned and that mail previously addressed to the Defendant at that address has not been returned.

Mr. Ruby did not respond, and following the hearing of July 19, the court issued a lien order directing that Goodyear withhold $550 per month from Mr. Ruby's wages, and forward those retained earnings to Mrs. Ruby. The order was served on Goodyear's Maryland resident agent on August 1, 1985.

On August 28, Goodyear filed a motion to dismiss the wage lien, contending that Mr. Ruby had not been properly served. Specifically, Goodyear argued that a request for a wage lien constituted a "new or additional claim for relief" within the meaning of Maryland Rule 1–321, and that notice

---

1. The Legislature first provided the special remedy of a continuing earnings lien for enforcement of spousal and child support orders by the enactment of ch. 496 of the 1976 Laws of Maryland. Originally codified at Art. 16, § 5B, these provisions were revised and made part of the Family Law Article by ch. 296 of the Laws of 1984. A continuing lien on attachable wages became generally available as a creditor's remedy in 1979. Ch. 452, Laws of Maryland 1978. See Maryland Code (1975, 1983 Repl. Vol., 1987 Cum.Supp.) § 15–601 *et seq.* of the Commercial Law Article, and Maryland Rule 2–646.

to Mr. Ruby was therefore required to be served in accordance with the rules for service of original process. Goodyear also noted that Mr. Ruby, through his Texas attorney, was insisting that Goodyear raise this defense on his behalf.[2] Goodyear's certificate of service discloses that Goodyear mailed a copy of its motion to Mr. Ruby at the Timber Lane address in Grapevine, Texas. Mrs. Ruby filed a response to the motion, contending that the court had obtained personal jurisdiction over Mr. Ruby and therefore retained continuing jurisdiction to enforce its judgment, and that Mr. Ruby had been given sufficient notice of the proceedings.

On October 10, ten days prior to the date scheduled for the hearing of its original motion, Goodyear filed a supplemental motion to dismiss, adding the contention that it could not be subjected to the jurisdiction of a Maryland court for a claim involving its operations in Texas. After the hearing, Judge William H. McCullough found that Goodyear was doing business in Maryland and could properly be brought into a Maryland court as a garnishee. Additionally, Judge McCullough found that the Circuit Court for Prince George's County had acquired original jurisdiction over Mr. Ruby, and that the notice given him was sufficient where the proceedings involved no new claim, but only the enforcement of the original order pursuant to the court's continuing jurisdiction. Goodyear filed an appeal to the Court of Special Appeals of Maryland, and we issued a writ of certiorari on our own motion, before consideration by that court.

## II.

Whether viewed from the constitutional perspective of due process or the requirements of Maryland Rule

---

**2.** A garnishee may assert any defense that it may have to the garnishment, as well as any defense that the debtor could assert. Maryland Rule 2–646(e). *See also, Impala Platinum v. Impala Sales,* 283 Md. 296, 314, 389 A.2d 887 (1978).

1–321, Mrs. Ruby's request for a wage lien was not an additional claim for relief requiring new in-state service on Mr. Ruby. The right to exercise personal jurisdiction over Mr. Ruby arose when he was served with the original complaint, and extended to all the relief sought by that complaint. Moreover, the enforcement and modification of relief granted pursuant to that complaint remains within the continuing jurisdiction of the circuit court, subject to any due process requirement that the party against whom the modification or enforcement is sought be given reasonable notice and an opportunity to be heard. *Glading v. Furman,* 282 Md. 200, 383 A.2d 398 (1978); R. Leflar, *American Conflicts Law,* § 31 (1977); *Restatement (Second) of Conflicts* § 26 (1971). Accordingly, there was no need to again serve Mr. Ruby in Maryland in order to enforce the judgment properly obtained against him.

There was, however, a requirement that Mr. Ruby be given notice of the request for an earnings lien, and an opportunity to be heard. Sections 10–121 and 10–122 of the Family Law Article, as they existed at the time this request for a wage lien was filed, required that a show cause order and a copy of the proposed lien order be served on the obligor before the hearing. We shall assume, without deciding, that the Due Process Clause of the United States Constitution also requires pre-attachment notice to the debtor under circumstances such as these, where no judgment has previously been entered, the arrears must be determined, and a determination must be made that the arrears have existed for more than 30 days. *See Griffin v. Griffin,* 327 U.S. 220, 228, 66 S.Ct. 556, 560, 90 L.Ed. 635 (1946). *Cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Accordingly, we examine the question of compliance with the statutory requirement of notice in the light of the assumed existence of a constitutional underpinning for the statute.

Initially, we note that the statute in effect at the time notice was required to be given in this case directed only that the obligor be served with notice, and did not specify the manner of service.[3] Maryland Code (1984) §§ 10–121, 10–122 of the Family Law Article. An earlier provision in § 10–121 stating that the notice "shall be served as provided for under the Maryland Rules" was deleted in the Code revision process as being unnecessary. *See* Revisor's Note to § 10–121, ch. 296 of the Laws of Maryland 1984. There is no Maryland Rule that specifically addresses the manner of service of notice of a request for a child or spousal support earnings lien.

Rule 1–321 deals generally with the manner of service of pleadings and papers other than original pleadings, and the manner of service prescribed by section (a)[4] of the rule is consistent with the service made in this case. That section provides that "service upon ... a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the ... party, or if not stated, to the last known address." We note also that in the most nearly comparable situation, involving notice required to be served on a debtor upon garnishment of his or her wages, the manner of service of an important notice concerning the right to contest the garnishment and

---

3. House Bill 618, enacted as ch. 329 of the 1985 Laws of Maryland, which took effect on July 1, 1985, significantly amended the law pertaining to earnings withholding for child and spousal support. With respect to the notice to be given an obligor, the Bill, as originally introduced, provided that notice be sent to the obligor by first class mail, postage prepaid. As finally enacted, the Bill requires that notice be sent by certified mail, return receipt requested and first class mail. Goodyear does not contend that the amendment to the statute controls in this case, but rather has consistently argued that nothing short of service in the same manner as original process will suffice.

4. Section (b) of Rule 1–321 provides that service need not be made upon a party in default for failure to appear, except when a new or additional claim for relief is asserted. Although no new or additional claim for relief is asserted by a request for an earnings lien, notice is required for the reasons we have previously discussed, and thus section (b) is inapplicable.

the availability of state and federal exemptions is by ordinary mail to the debtor's last known address. Maryland Rule 2-646(d). *See generally, Reigh v. Schleigh,* 784 F.2d 1191 (4th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 167, 93 L.Ed.2d 105 (1986).

What constitutes a sufficient method of notification in cases involving the exercise of continuing jurisdiction may vary depending upon the circumstances of the case and the particular relief sought. The objective is essential fairness, and the means employed to effect notice "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See also Greene v. Lindsey,* 456 U.S. 444, 450–51, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). In *Mathews v. Eldridge, supra,* the Supreme Court fashioned a three-factor test to determine the procedures that will be required, including the time and manner of notice that must be given, when a governmental action would deprive an individual of a constitutionally protected liberty or property interest:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335, 96 S.Ct. at 903.

■ Although the governmental action in this case clearly threatened a constitutionally protected property interest of Mr. Ruby, we conclude that service of the notice by ordinary mail was sufficient. We note that there was nothing to suggest that Mr. Ruby was a transient individual, or that the address given by Mrs. Ruby was not correct. The court mailed the notice of default to that address in January, 1985, and it was not returned. Similarly, the court

mailed a copy of the final judgment on April 18, and it was not returned. The court and Mrs. Ruby could reasonably have anticipated that notice of the request for an earnings lien mailed to Mr. Ruby at the same address less than two months later would be effective. We note also that Goodyear, the admitted employer of Mr. Ruby, used the same address to forward copies of its motions to Mr. Ruby. Finally, we note that although Mr. Ruby has urged Goodyear to present every available defense on his behalf, neither Goodyear nor Mr. Ruby has ever suggested that the notice by ordinary mail was not received.

The use of ordinary mail carries with it no guarantee of delivery, but it is an accepted business method of communication, *Greene v. Lindsey, supra,* 456 U.S. at 455–56, 102 S.Ct. at 1880 and it is regularly relied upon by the courts of this country in the conduct of extensive litigation. As Justice Jackson said for the Supreme Court in *Mullane v. Central Hanover Tr. Co., supra,* 339 U.S. at 319, 70 S.Ct. at 660, "[h]owever it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication." Other states have recognized the efficacy of ordinary mail as a means of giving notice. *See, e.g., Dobkin v. Chapman,* 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451 (1968); *Carter v. Carter,* 164 So.2d 219 (Fla.App.1964). *See also* 62 ALR.2d 544, 554–56.

We repeat, however, that the required manner of giving notice may vary according to the circumstances of the case, and what we say here may not be taken as a blanket approval of ordinary mail notice in every continuing jurisdiction case. Although the Legislature has ameliorated the problem in earnings lien cases of this type by specifying a method of service that seems well calculated to effect actual notice, the problem will remain in cases such as a motion for modification of an alimony or support order, or a motion for the entry of judgment for arrears claimed to have accrued as a result of such an order. In each case, the means employed for the giving of notice must be reasonably

calculated to achieve the desired result of timely notification.

### III.

We turn to Goodyear's contention that Maryland may not exercise jurisdiction over it in an action that is entirely unrelated to its contacts with this State. Goodyear admits that it has a resident agent in this State, that it enjoys a "national" business which includes Maryland, and that there are Goodyear stores in this State. It argues, however, that unless a corporation has its principal place of business in a state, or is incorporated there, it cannot be brought before the courts of that state for any matter unrelated to its business there, no matter how extensive, continuous, and systematic its general business contacts with the forum state might be. We disagree.

As we pointed out in *Camelback Ski Corp. v. Behning*, 307 Md. 270, 513 A.2d 874 (1986), *vacated and remanded*, —— U.S. ——, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987) (*Camelback I*), and more recently in *Camelback Ski Corp. v. Behning*, 312 Md. 330, 539 A.2d 1107 [1988] (*Camelback II*), there may be contacts reflecting continuous and systematic general business conduct that will be sufficient to support the exercise of jurisdiction over a claim that neither arises out of nor is directly related to the conduct of the defendant within the forum. Section 47(2) of the *Restatement (Second) of Conflicts* (1971) states the principle:

A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction.

That principle is firmly grounded upon the opinions of the Supreme Court. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). We agree with the comment

of Professor James, however, that if the cause of action "does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.'" F. James, *Civil Procedure* 640 (1965) (emphasis added).

Our determination that Goodyear is incorrect in the basic legal premise upon which it relied is not dispositive of the issue of jurisdiction. The nature and extent of Goodyear's contacts with Maryland must be weighed to determine whether it would initially appear to be fair to exercise jurisdiction here, and if that threshold is crossed the more general analysis of overall fairness[5] must be undertaken.

■ Unfortunately, the record does not contain sufficient information concerning the contacts of Goodyear with Maryland to have permitted a proper analysis by the trial judge. Although counsel for Goodyear conceded in argument before Judge McCullough that "I know there are Goodyear stores here, certainly.... Goodyear is qualified to do business in this State ... ," that does not provide sufficient information. The record does not disclose whether the Goodyear stores are company-owned or franchise operations. The fact that Goodyear has appointed a resident agent in this State would not alone be sufficient to subject it to suit here. Maryland Code (1975, 1985 Repl. Vol.) § 7–210 of the Corporations and Associations Article; *Springle v. Cottrell Eng'r Corp.*, 40 Md.App. 267, 270–71, 391 A.2d 456 (1978).

---

5. Factors relevant to this consideration include: the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Where, as here, the question of jurisdiction has been raised by the pleadings, the burden is on the party asserting jurisdiction to produce the facts necessary for the determination of the issue. However, we think Mrs. Ruby's failure to produce the required evidence may be due to the delay of Goodyear in raising the point, and to the fact that the attention of the parties seems primarily to have been focused upon the other issues. Additionally, we believe discovery proceedings may disclose that Goodyear does have rather extensive contacts with Maryland, justifying a careful analysis of the many factors we have discussed, and that the interests of justice would best be served by remanding the case to permit the development and presentation of that evidence. Maryland Rule 871(a).

## IV.

We shall comment upon two other questions raised by the amici curiae, Motor Vehicle Manufacturers Association of the United States, Inc., and Product Liability Advisory Council, Inc., and one additional argument offered by Goodyear. First, amici suggest that the question of the exercise of general jurisdiction over Goodyear need not be reached because § 10–134 of the Family Law Article mandates a different procedure. Section 10–134 provides:

In the case of an out-of-state obligor or out-of-state employer, the support enforcement agency shall, upon receipt of a request for service of an earnings withholding on the accrual of 30 days' support arrears, send to the appropriate state agency or court a request for earnings withholding and any information and fees required by that state to process the request.

This section was enacted by ch. 329 of the 1985 Laws of Maryland, and took effect on July 1, 1985. This change, as well as others made by House Bill 618, was in response to the 1984 amendments to the federal Child Support Enforce-

ment Act, 42 U.S.C.A. §§ 651–66.[6] Amici and Goodyear are in disagreement concerning the applicability and meaning of § 10–134. Goodyear is of the opinion that the section is not applicable in this case because the request for an earnings lien was filed before the effective date of the statute. In the alternative, Goodyear suggests that the section only applies to cases in which a support enforcement agency is involved. We need not and do not answer these questions because they were not raised below, nor by the *parties* in this Court. Maryland Rules 813(b) and 885. *See Md.–Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 15 n. 6, 511 A.2d 1079 (1986).

Goodyear has raised a similar argument—that it should not be subjected to a wage lien proceeding under these circumstances, because Mrs. Ruby should have proceeded under the Maryland Uniform Reciprocal Enforcement of Support Act, Maryland Code (1984) §§ 10–301 thru 10–329 of the Family Law Article. Goodyear concedes that the Uniform Reciprocal Enforcement of Support Act provides an alternative, and not exclusive, means of enforcement. We conclude that the availability of this enforcement mechanism is a proper factor for consideration by the trial judge in assessing the overall fairness of the assumption of jurisdiction, but is certainly not dispositive.

Additionally, amici suggest that the lien order, which was issued after the effective date of the 1985 amendments to our state law, is not in accord with the requirements of those amendments. Specifically, the amount ordered withheld to curtail the arrearage exceeds the permissible limit of 10% of the current support payment, § 10–121(b)(2), and the

---

**6.** See, particularly, 42 U.S.C.A. § 666(b)(9), imposing a requirement for qualifying under the federal act that: "The State must extend its withholding system under this subsection so that such system will include withholding from income derived within such State in cases where the applicable support orders were issued in other States, in order to assure that child support owed by absent parents in such State or any other State will be collected without regard to the residence of the child for whom the support is payable or of such child's custodial parent."

order does not contain the information required by § 10–125. Again, these are matters not raised by Goodyear, and we need not consider them. We observe, however, that the 1985 amendment does control the form and content of the order in this case, and if the trial judge determines after further proceedings that Goodyear's motion to dismiss should be denied, the lien order should then be amended to comply with existing law.

## Conclusion

The Circuit Court for Prince George's County was entitled to exercise continuing personal jurisdiction over Robert Ruby, and the manner in which notice of the exercise of that jurisdiction was given did not offend the requirements of due process or of the applicable Maryland statute. Goodyear is incorrect in its assertion that it cannot be subjected to the jurisdiction of a Maryland court in connection with a matter that did not arise out of, or bear a direct relation to, its contacts with this State. This case will be remanded to permit the introduction of additional evidence, and a determination by the trial judge of whether Goodyear has contacts with this State reflecting continuing and systematic general business conduct sufficient to support the exercise of jurisdiction.

ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY DENYING THE MOTION OF GOODYEAR TIRE AND RUBBER COMPANY TO DISMISS THE EARNINGS LIEN IS VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS.