545 A.2d 1332

**GOLDEN SANDS CLUB CONDOMINIUM, INC.**

v.

**Harry WALLER.**

**No. 167, Sept. Term, 1987.**

Court of Appeals of Maryland.

Aug. 29, 1988.

Daniel M. Long (Henry P. Walters, P.A., on brief), Pocomoke City, for appellee.

James W. Almand (Ayres, Jenkins, Gordy & Almand, P.A., on brief), Ocean City, for appellant.

P. Michael Nagle, Paul J. Levine, Hyatt & Rhoads, P.C., Joseph D. Douglass, Sachs, Greenebaum & Tayler, on brief, Washington, D.C., amicus curiae for Washington Metropolitan Chapter, Community Associations Institute.

J. Joseph Curran, Jr., Atty. Gen., Andrew H. Baida, Asst. Atty. Gen., on brief, Baltimore, amicus curiae for State.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The Maryland Contract Lien Act is codified as Title 14, Subtitle 2 of the Real Property Article. It was enacted by Ch. 736, Acts of 1985. It includes procedures for establishing and enforcing a lien against a condominium unit when certain assessments and other costs chargeable against the unit have not been paid. We shall here hold that those procedures, so far as they relate to requirements of notice to the unit owner and that owner's entitlement to a hearing, afford the due process of law demanded by the United States and Maryland Constitutions.[1]

We reach this holding on a record in which the facts are undisputed. Appellee, Harry Waller (Waller), is the owner of condominium unit no. 1518 in a condominium governed by appellant, Golden Sands Club Condominium, Inc. (Golden

---

**1.** The federal due process claim asserted here is based on the fourteenth amendment to the United States Constitution; the State claim derives from Article 24 of the Maryland Declaration of Rights. We have previously held that these two provisions "have the same meaning and ... Supreme Court interpretations of the federal provision are authority for interpretation of Article 24." *Department of Transportation v. Armacost,* 299 Md. 392, 415–416, 474 A.2d 191, 203 (1984). *Also see, e.g., Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052, 1056, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *reh. denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980); *Barry Properties v. Fick Bros.,* 277 Md. 15, 22, 353 A.2d 222, 227 (1976).

Sands).[2]  As authorized by Md.Code (1988 Repl.Vol.), § 11–110(d) of the Real Property Article, a part of the Maryland Condominium Act, and pursuant to the condominium master deed and declaration and bylaws, Golden Sands levied certain assessments against Waller.[3]  According to Golden Sands, Waller did not pay the assessments.  When the assessments and the related costs, again according to Golden Sands, had mounted up to $10,661.44, Golden Sands sent Waller written notice of intention to create a lien against the unit.  *See* § 14–203(a) of the Real Property Article.

Pursuant to the provisions of § 14–203(c) (of which more later), Waller sued Golden Sands in the Circuit Court for Worcester County.  He alleged, among other things, that the statutory lien provisions were unconstitutional.  The circuit court (Cathell, J.) agreed with him and on 2 November 1987

> ORDERED AND DECREED that the lien claim by Golden Sands Condominium against Harry Waller be, and the same hereby is, declared and determined to be invalid in that it is based on the Maryland Contract Lien Act which this Court hereby finds to be unconstitutional for the reasons hereinabove cited.

Golden Sands appealed to the Court of Special Appeals. We granted certiorari before the case was argued in that court.  311 Md. 557, 536 A.2d 664 (1988).

## I.

■  "At the core of the procedural due process right is the guarantee of an opportunity to be heard and its instru-

---

**2.**  Golden Sands is the condominium association or council of unit owners.

**3.**  Item Eighth of the master deed and declaration provided that certain charges against any condominium unit "shall be levied and assessed as a lien at the beginning of each fiscal year."  Art. V of the bylaws implemented this provision.  The deed conveying unit 1518 to Waller made the unit subject to the provisions of the master deed and the bylaws.

mental corollary, a promise of prior notice." L. Tribe, *American Constitutional Law* § 10–15 at 732 (2d ed. 1988) (hereinafter *American Constitutional Law* ).[4] Judge Cathell did not address the problem of notice. His decision focused on the hearing aspect. We shall explore that first.

The Maryland Contract Lien Act requires certain notice to be given to a party against whom (or against whose property) a lien is claimed. Real Prop. Art., § 14–203(a) and (b). It goes on to provide:

(c)(1) A party to whom notice is given under subsection (a) of this section may, within 30 days after the notice is mailed to the party, file a complaint in the circuit court for the county in which any part of the property is located to determine whether probable cause exists for the establishment of a lien.

(2) A complaint filed under this section shall include:

(i) The name of the complainant and the name of the party seeking to establish the lien;

(ii) A copy of the notice sent under subsection (a) of this section; and

(iii) An affidavit containing a statement of facts that would preclude establishment of the lien for the damages alleged in the notice.

(3) A party filing a complaint under this subsection may request a hearing at which any party may appear to present evidence.

---

4. Of course, to invoke the protections of procedural due process in a property context, the party asserting unconstitutionality must show that (1) State action has been employed (2) to deprive that party of a substantial interest in property. *Tulsa Professional Collection Serv. v. Pope,* 485 U.S. ——, ——, 108 S.Ct. 1340, 1344–1345, 99 L.Ed.2d 565, 575 (1988); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30, 39 (1978); *Department of Transportation v. Armacost,* 299 Md. at 416, 474 A.2d at 203; *Pitsenberger v. Pitsenberger,* 287 Md. at 27, 410 A.2d at 1056; L. Tribe, *American Constitutional Law* § 10–8 at 680 (2d ed. 1988). In the trial court Judge Cathell found both these prerequisites to exist. In the view we take of the case, we need not and do not decide the question. We merely assume, *arguendo,* the correctness of Judge Cathell's conclusion in that regard.

(d) If a complaint is filed, the party seeking to establish the lien has the burden of proof.

(e) The clerk of the circuit court shall docket the proceedings under this section, and all process shall issue out of and all pleadings shall be filed in a single action.

(f) Before any hearing is held under subsection (c) of this section, the party seeking to establish a lien may supplement, by means of an affidavit, any information contained in the notice given under subsection (a) of this section.

(g)(1) If a complaint is filed under subsection (c) of this section, the court shall review any pleadings filed, including any supplementary affidavit filed under subsection (f) of this section, and shall conduct a hearing if requested under subsection (c)(3) of this section.

(2) If the court determines that probable cause exists to establish a lien, it shall order the lien imposed.

\*  \*  \*  \*  \*  \*

(h)(1) If the court orders a lien to be imposed under subsection (g) of this section, or if the owner of the property against which a lien is intended to be imposed fails to file a complaint under subsection (c) of this section the party seeking to create the lien may file a statement of lien among the land records of each county in which any portion of the property is located within the earlier of:

(i) the expiration of 30 days of the court order;  or

(ii) 120 days after notice under subsection (a) of this section was mailed to a party.

It is thus apparent that the owner of the property against which the lien is sought under the Contract Lien Act may obtain a hearing by filing an action in circuit court against the lien claimant, and by requesting a hearing.  If that is done, no lien can be imposed until there has been a hearing.  If that is not done, a lien may be established upon the expiration of 120 days from the mailing of notice to the property owner.

Judge Cathell thought this procedure failed to provide the process that was due because

> what is [constitutionally] required is a hearing or opportunity for a hearing established in a case filed by the [lien] claimant.   Under the Maryland Contract Lien Act, the [property] owner has to file suit....
>
> $*$      $*$      $*$      $*$      $*$      $*$
>
> In other words, when [an] ... owner receives notice he has two choices.  First, he can do nothing and in approximately 150 [*sic*] days the condominium gets its lien without a hearing, without affidavits, and without judicial review and when the lien is recorded, the owner's property is encumbered....   Secondly, the owner can sue himself.  Neither one nor both courses of action appear to be constitutionally reasonable to the Court.

We believe that when the judge struck down the legislatively established hearing provisions, he applied a standard of due process higher than that constitutionally required.

The measuring device to which Judge Cathell looked was the Mechanics' Lien Law as it was rewritten following our decision in *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976).  *Barry Properties* struck down the bulk of the pre-existing Mechanics' Lien Law (Title 9 of the Real Property Article, essentially as enacted by Ch. 12, Acts of 1974) because it "permit[ted] an owner to be deprived of a significant property interest without notice or a prior hearing, and thus [was] ... unconstitutional unless it provide[d] protections such as those discussed in *Mitchell [v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) ] and *North Ga. Finishing [, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) ]...." 277 Md. at 31, 353 A.2d at 232 [footnote omitted].  Because "Maryland mechanics' liens [came] into existence upon the furnishing of labor or materials," the protections of *Mitchell* and *North Ga. Finishing* were not afforded.  *Id.* at 31–32, 353 A.2d at 232.  Those safeguards were that prior to creation of the lien, the "creditor provide a sworn affidavit on personal knowledge setting forth the facts on which

the lien is based, file a bond to protect the debtor, submit the lien to preliminary judicial scrutiny or [provide] ... the debtor ... an opportunity for a prompt post-seizure hearing." *Id.* Note that we stated them in the disjunctive.

In prompt response to *Barry Properties*, decided on 10 February 1976, the General Assembly enacted emergency legislation that became effective 4 May 1976, as Ch. 349, Acts of 1976. Chapter 349 rewrote Title 9 of the Real Property Article to make it clear that, so far as the hearing was concerned, no mechanics' lien would exist until (1) the claimant had filed in circuit court a petition to establish the lien (§ 9–105), and (2) the owner (lienee) had been given the opportunity to show cause why the lien should not attach, including an opportunity to be heard (§ 9–105). The 1976 legislation also contained (and the statute still contains) an elaborate mechanism of affidavits in support of and in opposition to the lien. It seems to be these provisions that caught Judge Cathell's attention and caused him to conclude that the Contract Lien Act, which lacks them, did not pass constitutional muster.[5]

---

**5.** A word about the relationship between the Contract Lien Act and the Mechanics' Lien Law is in order.

Since its earliest date, Maryland statutory law dealing with condominiums has included provisions for liens against units. *See* former Art. 21, §§ 131(d) and 132, as contained in the Horizontal Property Act enacted by Ch. 387, Acts of 1963. When this became the Maryland Condominium Act via Ch. 641, Acts of 1974, the lien provisions were substantially rewritten. *See* § 11–110 of the Real Property Article as contained in Ch. 641. *Also see Report of the Condominium Revision Committee of the Real Property, Planning and Zoning Section of the Maryland State Bar Association,* printed at Md.Code (1974, 1981 Cum.Supp.) of the Real Property Article at 95–96, and the comments of that committee attached to § 11–110 of the 1981 Cum.Supp. at 115–116.

Even this amended statute permitted a lien against a unit to be established without prior notice to the unit owner and without prior hearing or judicial scrutiny. Judge Cathell held it unconstitutional in *Surfside 84 Condominium Council of Unit Owners v. Mullen,* Chy. Case No. 13,915, Circuit Court for Worcester County (27 February 1984). Reliance was placed on *Barry Properties* which decision produced a major revision of the Mechanics' Lien Law to meet due process concerns. In its *Final Report to the 1985 Legislative Session,* the

But the Mechanics' Lien Act procedures do not necessarily represent the minimal requirements of constitutional procedural due process. Under the Contract Lien Act the opportunity for hearing is available, at the unit owner's option, before a lien may attach. In that circumstance, judicial scrutiny of affidavits and the like is not essential to constitutionality. As *Mitchell* and *North Ga. Finishing* make clear, those procedures are necessary if a valid lien or other substantial interference with a property interest is to arise prior to the possibility of a hearing and even then there must be opportunity for a prompt post-interference hearing. *Mitchell*, 416 U.S. at 611–620, 94 S.Ct. at 1902–1906, 40 L.Ed.2d at 415–421; *North Ga. Finishing*, 419 U.S. at 606–608, 95 S.Ct. at 722–723, 42 L.Ed.2d at 757–758. But as we recognized in *Barry Properties*, if, for example, there is a fair opportunity for judicial scrutiny *before* the lien attaches, the hearing requirement is satisfied. 277 Md. at 30–32, 353 A.2d at 231–233. There is no constitutional need for the probable cause determinations or the affidavit

---

Governor's Commission on Condominiums, Cooperatives and Homeowners Associations took notice of Judge Cathell's decision. *Final Report* at 4–5. The Commission noted that legislation introduced at its behest in 1984 (S.B. 953) was intended to correct the problems perceived by Judge Cathell by rewriting § 11–110 to track almost verbatim the procedural provisions of the 1976 Mechanics' Lien Law. *Final Report* at 5. Senate Bill 953 became Ch. 581, Acts of 1984, but during its passage, the House Judiciary Committee greatly weakened the measure. *Final Report* at 5. Although a provision for notice to the unit owner survived, the only hearing to which the owner was entitled prior to establishment of the lien was before the condominium's board of directors (*i.e.*, the lien claimant). 1984 Md.Laws, Ch. 581 at 3013. The Governor's Commission was concerned that "the Court of Special Appeals will uphold Judge Cathell's decision in the *Surfside 84* case...." *Final Report* at 5. This prediction proved absolutely accurate. *See Surfside 84 Condominium Council of Unit Owners v. Mullen, et ux.,* Court of Special Appeals, No. 495, Sept. Term, 1984 (filed 28 January 1985) (unreported). The Commission proposed further legislation "with the hope that it will overcome the constitutional defects contained in Section 11–110 of the Condominium Act...." That legislation was Ch. 736, Acts of 1985, which is now before us. Although the 1985 enactment, unlike its 1984 predecessor, is not a clone of the 1976 Mechanics' Lien Law, there is enough similarity to suggest cousinship even if not parentage.

and counteraffidavit procedures now contained in the Mechanics' Lien Act.

Under the Contract Lien Act, as we have seen, no lien attaches until after the unit owner has had an opportunity to be heard. If the owner requests a hearing, there can be no lien until the circuit court has (1) reviewed the pleadings and any affidavit(s) on file, and (2) held a hearing. Section 14–203(g)(1). At that hearing the lien claimant has the burden of proof. Section 14–203(d). The court may not order a lien imposed unless it finds "that probable cause exists to establish a lien...." Section 14–203(g)(2). Subject to the adequacy of the notice provisions, to which we shall turn shortly, these provisions give the necessary opportunity for hearing and provide a reasonable procedure for testing the validity of the lien prior to its creation, unless the fact that the owner must file suit in order to obtain a hearing is unconstitutionally burdensome.

The current procedure for establishing a lien under the Mechanics' Lien Law calls for the lien claimant to initiate proceedings in the circuit court. The Contract Lien Act takes the opposite tack: it is the property owner who is required to initiate suit in the circuit court if a hearing is to be had. Section 14–203(c). This, of course, places a burden on the owner, who must prepare a complaint and pay filing fees in order to contest the lien.

But due process, " 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236, *reh. denied,* 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 (1961) (quoting *Joint Anti–Fascist Refugee Com. v. McGrath,* 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817, 849 (1951) (Frankfurter, J., concurring)). "On the contrary, due process is flexible and calls for only such procedural protections as the particular situation demands." *Armacost,* 299 Md. at 416, 474 A.2d at 203. In the realm of statutory creditors' remedies, "[t]he procedural protection is adequate

if it represents a fair accommodation of the respective interests of creditor and debtor." *Finberg v. Sullivan,* 634 F.2d 50, 58 (3d Cir.1980).

The interests of the debtor here are obvious. The chief interest of the creditor is a reasonable mechanism for the collection of assessments from delinquent unit owners. An effective procedure for the collection of assessments is required for the protection of all unit owners, for these assessments are used, in large part, for the maintenance and repair of the common areas of the condominium. It is for that reason that unit owners agree to pay assessments and agree, as did Waller when he accepted Golden Sands's declaration and bylaws, that unpaid assessments may become liens.

The unit owner must file suit, but that suit is not a complicated one. Section 14–203(c) spells out what the complaint must contain: names of the unit owner and the claimant; a copy of the notice sent to the unit owner under § 14–203(a); "[a]n affidavit containing a statement of facts that would preclude establishment of the lien for the damages alleged in the notice"; and a request for hearing, if one is desired. Once the complaint is filed, the judicial system must see that process is issued and served. This is no concern of the unit owner's, since once he files his complaint and requests a hearing, no lien can be imposed until the court so orders after a hearing is held. Failure of the court properly to process the complaint would burden the claimant, not the owner. And, as we have already said, the burden of proof—indeed, the burden of pressing forward with the proceedings—also falls on the claimant. The unit owner has to do no more than file the complaint and pay the costs.[6]

---

6. We note that under appropriate circumstances prepayment of filing fees may be waived. Md.Code (1984 Repl.Vol.), § 7–201(b) Cts. & Jud.Proc. Art. *Also see* Revised Schedule of Circuit Court Costs and Charges (following § 7–202), §§ 2(c), 3(b)(2)(ii). We observe, however, that condominium unit owners are not often likely to be among the indigent.

■ We hold that procedural due process does not prevent the approach to hearing which the legislature has taken. In balancing the interests of the parties, the General Assembly has looked to economy, efficiency, and minimal involvement of the judiciary. At the same time, it has given the unit owner a reasonably simple and not unduly expensive way to secure a hearing and judicial action as prerequisites to the creation of a lien on the unit. The hearing procedure here meets the tests of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "[D]ue process is not violated merely because the burden is put on the defendant to request a hearing." *United States v. An Article of Device "Theramatic",* 715 F.2d 1339, 1343 (9th Cir.1983), *cert. denied, sub. nom., Cloward v. United States,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984). For example, we do not believe that due process is violated because one seeking to regain personal property held by an artisan pursuant to an artisan's lien must institute a replevin action to do so. Nor is it violated by § 14–203(c)'s requirement that the property owner file suit to resist the lien.

## II.

The former Mechanics' Lien Law was unconstitutional partly because it permitted an owner "to be deprived of a significant property interest without notice...." *Barry Properties,* 277 Md. at 31, 353 A.2d at 232. "[S]tate action affecting property must generally be accompanied by notification of that action...." *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. ——, ——, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565, 574 (1988). Under the Contract Lien Act, notice is particularly important, for it is by that device that the unit owner is officially informed not only that a lien against his unit is being sought, but also what he must do to oppose that action, if he wishes to do so. As the Supreme Court has put it: " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.*, 485 U.S. at ——, 108 S.Ct. at 1344, 99 L.Ed.2d at 574 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)). *Also see Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180, 185 (1983).

■ Like the concept of a due process hearing, however, the concept of " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action' " is not a static principle, yielding but a single uniformly applicable rule. Rather, a court considering the constitutionality of notice in a particular case must balance the interests of the state or the giver of notice against the individual interest sought to be protected by the fourteenth amendment. The focus is on the reasonableness of the balance; whether a method of giving notice is reasonable in a given case depends on the specific circumstances of that case. *See Tulsa Professional Collection Serv.*, 485 U.S. at ——, 108 S.Ct. at 1344, 99 L.Ed.2d at 574–575; *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873; *Goodyear Tire v. Ruby*, 312 Md. 413, 420, 540 A.2d 482, 485 (1988); *Armacost*, 299 Md. at 416, 474 A.2d at 203. As Justice Jackson explained in *Mullane:*

> The notice must be of such nature as reasonably to convey the required information . . ., and it must afford a reasonable time for those interested to make their appearance. . . . The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

339 U.S. at 314–315, 70 S.Ct. at 657–658, 94 L.Ed. at 873–874. With these principles in mind, we turn to the statutory requirements with respect to notice.

Section 14–203 in pertinent part provides:

(a)(1) A party seeking to create a lien as the result of a breach of contract [7] shall, within 2 years of a breach of contract, give written notice to the party against whose property the lien is intended to be imposed.

(2) Notice under this section shall be given by certified or registered mail, return receipt requested, and shall be addressed to the owner of the property against which the lien is sought to be imposed at the owner's last known address.

(b) A notice under subsection (a) of this section shall include:

(1) The name and address of the party seeking to create the lien;

(2) A statement of intent to create the lien;

(3) An identification of the contract;

(4) The nature of the alleged breach;

(5) The amount of alleged damages;

(6) A description of the property against which the lien is intended to be imposed sufficient to identify the property, and stating the county or counties in which the property is located; and

(7) A statement that the party against whose property the lien is intended to be imposed has the right to a hearing under subsection (c) of this section.

The notice sent to and received by Waller in pertinent part warned that

[Golden Sands] intends to create a lien against the above referenced property [Golden Sands Unit No. 1518,

---

7. "Contract" is defined to include "a declaration or bylaws recorded under the provisions of the Maryland Condominium Act." Section 14–201(b)(2). "Party" means, among other things, the "signatory to a contract" or one who "[o]wns property subject to the provisions of a contract." Section 14–201(e)(1) and (e)(3).

in Worcester County], which you own, due to your failure to pay the charges on the attached statement as required by ... [Golden Sands's] Declaration and By–Laws....

This constitutes notice required by Real Property Article § 14–201 [*sic*] that you have the right to a hearing by filing a complaint in the Circuit Court for Worcester County, Maryland, to determine whether probable cause exists for the establishment of a lien. The complaint must be filed within 30 days after this notice is mailed to you, and the complaint must include the following: (1) the name of the complainant and the name of the party seeking to establish the lien; (2) a copy of this notice; and (3) an affidavit containing a statement of facts that would preclude establishment of the lien.... In your complaint you may request a hearing at which any party may appear to present evidence.

[Golden Sands] intends to create a lien against your property at the earliest time allowed by Maryland law unless you pay the amount due as shown on the attached statement.

This notice more than complied with the statutory requirements; indeed, Waller does not argue to the contrary. And except for a passing comment that the statute "may not suggest clearly to ... owners or to the persons receipting for their certified mail that an affirmative response by filing a complaint within 30 days is necessary to avoid imposition of a lien ..." [Brief at 9], he does not assert that the contents of the notice were insufficient. As to the passing comment, we believe that the notice sent in this case, with its citation to the Contract Lien Act, its clear warning of intent to create a lien, its statement of the right to a hearing, and its description of how to exercise that right, meets and may exceed the minimum requirements of due process. *See Reigh v. Schleigh,* 784 F.2d 1191 (4th Cir.), *cert. denied,* 479 U.S. 847, 107 S.Ct. 167, 93 L.Ed.2d 105 (1986).

Waller's real contention as to notice is that the Contract Lien Act does not provide the "double notice" or the "sec-

ond notice" [Brief at 7] called for by the post-*Barry Proper-ties* Mechanics' Lien Law. The latter requires a subcon-tractor who seeks to obtain a lien to give written notice of intention to do so within a certain time period. Section 9–104(a). The notice is "effective if given by registered or certified mail, return receipt requested, or personally deliv-ered to the owner by the claimant or his agent." Section 9–104(c). There is also provision for giving this initial notice by posting under some circumstances. Section 9–104(e). Beyond this, "a person entitled to a lien" must file a "petition to establish the mechanic's lien" in the appropriate circuit court. Section 9–105(a). If the petition and its accompanying documents appear to be in order, the proper-ty owner receives another notice in the form of an order to show cause why the lien should not attach. Section 9–106(a); Md.Rule BG 73 a.

*Barry Properties* does not hold that dual notice is a due process prerequisite to the constitutionality of the Mechan-ics' Lien Law. It is probable that the dual notice require-ment was produced by the superimposition of the provision for judicial action prior to establishment of the lien on the older notice of intent to claim lien statute; *see* Md.Code (1974), § 9–103 Real Prop. Art. Indeed, the present Me-chanics' Lien Law calls for dual notice only if a subcontrac-tor is involved. If the lien claimant is a general contractor, *see Kaufman v. Miller*, 75 Md.App. 545, 542 A.2d 391 (1988), § 9–104 does not apply and only the § 9–106 notice need be given. *Barry Properties*, 277 Md. at 30–31, 353 A.2d at 230–232. Waller, nevertheless, insists that double notice is essential to the validity of a condominium assess-ment lien. He explains that "[s]everal classes of condomin-ium owners are particularly vulnerable to the one-shot notice...." [Brief at 9.] These classes, he says, include elderly retirees who may, if in good health, travel extensive-ly, and if in bad health, be under care in hospitals or nursing homes. Those individuals might not receive the registered or certified mail notice called for by § 14–203, according to Waller. [Brief at 9.]

Waller does not assert that he belongs to any of these classes, but in any case "[t]he constitutionality of a particular notice mechanism is not to be judged by its actual success—whether an individual or group is in fact notified—but turns instead on whether the chosen method is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *American Constitutional Law, supra,* § 10–15 at 732–733 (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873) [footnote omitted]. We are dealing here with the notice requirements of procedural due process. In that context, actual receipt of notice is not the test. For example, a creditor whose existence and name and address are not reasonably ascertainable may be deprived of a property interest, it seems, after receiving only constructive notice (publication), just as a mortgagee whose existence is not apparent may be similarly treated. These are the implications, at least, of *Tulsa Professional Collection Serv., supra,* and *Mennonite Bd. of Missions, supra.*

Likewise, in *Greene v. Lindsey,* 456 U.S. 444, 453, 102 S.Ct. 1874, 1879, 72 L.Ed.2d 249, 257 (1982), the Supreme Court stressed that use of posted notice in a forcible entry and detainer proceeding would too often result "in a failure to provide actual notice to the tenant concerned." It did not say that due process always requires actual notice. Justice Brennan, for the Court, observed that "[n]otice by mail in the circumstances of this case would surely go a long way toward providing the constitutionally required [notice]...." *Id.* at 455, 102 S.Ct. at 1880, 72 L.Ed.2d at 258. Indeed, he had "no hesitation in concluding that posted service *accompanied by* mail service, is constitutionally preferable to posted service alone." *Id.* at 455 n. 9, 102 S.Ct. at 1880 n. 9, 72 L.Ed.2d at 258 n. 9 [emphasis in original].

Authorities from other jurisdictions provide support for our interpretation of these Supreme Court precedents. Very recently, for example, a United States court of appeals, quoting *Mullane* and citing *Mennonite Bd. of Mis-*

*sions,* reasoned that "[t]he proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice." *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988). The court went on to hold that "[d]ue process does not require that notice [of a tax lien foreclosure] sent by first-class mail be proven to have been received." *Id.* at 651. And as an Indiana intermediate appellate court reasoned, relying in part on *Mennonite Bd. of Missions,*

> [n]otice to a property owner of a pending tax sale by certified mail at his last known address is a means of notice reasonably calculated ... to apprise the owner of the pending tax sale and afford him an opportunity to present his objections.

*Holland v. King,* 500 N.E.2d 1229, 1235 (Ind.App.1986). The tax sale was upheld although the property owner had never received actual notice of it. *Also see Dow v. State,* 396 Mich. 192, 211, 240 N.W.2d 450, 459 (1976) (Mailed notice directed to address "reasonably calculated to reach the person entitled to notice" is sufficient; failure of process to effect actual notice does not preclude foreclosure of statutory lien); *Bailey v. State,* 95 Nev. 378, 381, 594 P.2d 734, 736 (1979) (cancellation of water rights did not deprive owner of property without due process when notice sent by certified mail to correct address, but owner did not receive it); *Townsend v. Dollison,* 66 Ohio St.2d 225, 227–228, 20 Ohio Ops.3d 220, 226–228, 421 N.E.2d 146, 147–148 (1981) (under *Mullane* doctrine, notice of driver's license suspension mailed to licensee's last known address did not constitute inadequate notice for due process purposes even though license holder never received it).

It is, nevertheless, true that the more significant the interest at stake, the greater the required certainty that the notice will be effective. *American Constitutional Law,* § 10–15 at 733. Waller's interest in maintaining his condominium unit unencumbered by liens (and protected from foreclosure sale because of an unsatisfied lien, § 14–204)

obviously is substantial. The countervailing interests in protecting condominium associations and all unit owners from financial hardship because of delinquent assessments is also weighty, but surely not weightier than the State's interest in prompt administration of estates, implicated in *Tulsa Professional Collection Serv.* or the collection of taxes involved in *Mennonite Bd. of Missions,* both *supra.* Consequently, we shall examine the notice requirements established by these cases, building on the foundation laid by *Mullane.*

*Tulsa Professional Collection Serv.* involved an Oklahoma statute under which creditors of estates were required to file claims within a specified period or else be forever barred. Creditors were advised of the need for doing so by a published notice. Tulsa Professional Collection Services, whose status as a creditor and address were reasonably ascertainable, missed the deadline established by the published notice and thereupon asserted that the statutory constructive notice denied it procedural due process. The Supreme Court agreed, relying on *Mennonite Bd. of Missions* for the proposition that provision for (not receipt of) actual notice (as opposed to constructive notice) " 'is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable.' " *Tulsa Professional Collection Serv.,* 485 U.S. at ——, 108 S.Ct. at 1344, 99 L.Ed. at 575 (quoting *Mennonite Bd. of Missions,* 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188 [emphasis in *Mennonite* ] ). And in *Mennonite,* rejecting the constitutional adequacy of constructive notice of a tax sale of a mortgagee whose name and address were reasonably ascertainable, the Court, quoting *Greene v. Lindsey,* 456 U.S. at 455, 102 S.Ct. at 1881, 72 L.Ed.2d at 258, held that the taxing authority's "use of these less reliable forms of notice [publication and posting] is not reasonable [in the case of a readily identifiable mortgagee] where, as here, 'an inexpensive and efficient mechanism such as mail service is available.' " *Mennonite,*

462 U.S. at 799, 103 S.Ct. at 2712, 77 L.Ed.2d at 188. Under the circumstances the Court believed "[p]ersonal service or mailed notice is required...." *Id.*

It thus appears that for notice purposes in circumstances involving the potential deprivation of a substantial interest in property, the court has equated personal service and mail service as means equally well-calculated to attain actual notice and, therefore, acceptable from the due process viewpoint. *Also see Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) (Court recognized that service by registered mail, in place of personal service, may satisfy the requirements of due process). *And see Goodyear Tire,* 312 Md. at 420, 540 A.2d at 485, in which Judge McAuliffe, for this Court, wrote:

> What constitutes a sufficient method of notification in cases involving continuing jurisdiction may vary depending upon the circumstances of the case and the particular relief sought. The objective is essential fairness, and the means employed to effect notice "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 315, 70 S.Ct. 652 [657], 94 L.Ed. 865 (1950).

We concluded that "[a]lthough the governmental action in this case clearly threatened a constitutionally protected property interest of Mr. Ruby, ... service of the notice by ordinary mail was sufficient." *Id.*

■ We reach the same conclusion here. Mail is a reasonably reliable means of delivering notice to a condominium unit owner whose unit is to be subjected to a contract lien. The requirement of certified or registered mail, return receipt requested, is intended to enhance the reliability of the notice procedure. The unit owner has it in his or her power to further assure the likelihood of receipt of notice by keeping the condominium association aware of his or her mailing address, providing proper forwarding instructions, authorizing an agent to receipt for mail, and the like. We

cannot say that the method chosen by the legislature is constitutionally unreasonable.

### III.

For the reasons stated, we reverse the judgment of the Circuit Court for Worcester County holding the Contract Lien Act unconstitutional. Since the trial court did not dispose of the nonconstitutional issues before it in this case, we remand the case for further proceedings.

JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED. CASE REMAND-ED FOR FURTHER PROCEEDINGS NOT INCONSIST-ENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.