661 A.2d 712

Susan MORRIS

v.

Mark GREGORY et al.

No. 130, Sept. Term, 1994.

Court of Appeals of Maryland.

July 18, 1995.

Edward T. Pinder, Baltimore, for petitioner.

Henry W. Stewart, Towson, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

We issued a writ of certiorari in this case to determine whether the proprietor of an automobile body repair shop who specializes in the restoration of antique motor vehicles is subject to the requirements of the Automobile Repair Facility Act (ARFA), Maryland Code (1975, 1990 Repl.Vol.), §§ 14–1001 to 14–1009 of the Commercial Law Article.[1]  We shall hold that he is.

## I

The petitioner, Susan Morris, was the owner of a 1964 Lotus Elan automobile.  In 1988, that vehicle was involved in an accident.  The car sustained damage to its right rear fender and passenger side door as well as a crack in the fiberglass near the passenger seat.  The fiberglass damage worsened with continued use of the car.  As a result, water began to leak into the passenger compartment.  In 1991 Morris decided

---

1. Unless otherwise indicated, all code citations are to the Automobile Repair Facility Act in §§ 14–1001 to 14–1009 of the Commercial Law Article.

to have the accident damage repaired and then to have further body restoration and mechanical work done on the car.

In June of 1991, Morris was referred to Mark Gregory, trading as "Mark of Distinction, Quality Restorations."[2] She showed him a 1965 photograph of her automobile and requested an estimate of the cost of restoring the body of the car to its appearance in that photograph. She also advised Gregory that she and her husband, David Morris, only wanted to spend $3500.00 for the work. Gregory orally estimated that the restoration could be done for $3500.00, but he refused to put that estimate in writing.

According to his testimony, Gregory explained that he could only do the work on a time and material basis. Both David and Susan Morris testified, however, that an oral agreement was reached with Gregory that his charge for the body restoration would not exceed $3500.00. In September of 1991 the Morrises delivered the automobile to Gregory's shop and with his permission dismantled it in an effort to reduce the cost of the restoration. They also provided Gregory with most of the parts which Gregory would use in performing his work.

Gregory further testified that after the paint was stripped from the vehicle, he discovered that the fiberglass damage was more extensive than was originally known. Gregory testified that he notified Morris that there would be additional charges. On the other hand, Morris testified that Gregory only mentioned that the stripping process had caused some pinholes in the fiberglass that needed to be filled, and that no mention was made of any additional charges. Furthermore, she testified that had she been informed that the cost of the work was going to exceed $6000.00, she would not have authorized Gregory to proceed with the work. At no time did Gregory offer the petitioner an estimate, or notice of her right to an estimate, prior to beginning work on the car.

---

**2.** This business was incorporated under the name "Mark of Distinction, Inc." The suit from which this appeal arises named Gregory individually and the corporation as defendants. We shall refer to both the respondents herein as "Gregory."

Gregory worked on the vehicle from January to March of 1992. He then presented the petitioner with bills totaling $6155.65, and threatened to sell the vehicle if the bills were not paid. Because of that threat, the petitioner paid the bills.

Morris then sued Gregory in the District Court of Maryland, sitting in Baltimore County. One of the counts in her complaint sought damages and reasonable counsel fees for an alleged unfair or deceptive practice under the Consumer Protection Act (the CPA), Md.Code (1975, 1990 Repl.Vol.), §§ 13–101 to 13–501 of the Commercial Law Article, because Gregory performed the work on the petitioner's automobile without first informing her that she had the right to a written estimate of the cost of the body work he would perform or furnishing her with such an estimate as required by ARFA.

The trial judge held that as a matter of law ARFA did not apply to persons performing automobile body work and granted judgment for Gregory on the CPA count. Morris was awarded a judgment on another count, unrelated to the issue we resolve in the instant case, in the amount of $487.50. Morris appealed to the Circuit Court for Baltimore County.

After reviewing the record of the trial and hearing argument of counsel, the circuit court judge ruled that ARFA generally applied to automotive body work, but that it did not apply to restorations of antique automobiles. The circuit court judge issued an opinion and order on August 18, 1994, affirming the district court judgment.

Morris appealed to the Court of Special Appeals. As the judgment of the circuit court appealed from was entered in exercise of its appellate jurisdiction in reviewing the decision of a district court, that appeal was improper. Accordingly, the intermediate appellate court pursuant to Md.Code (1974, 1994 Repl.Vol.), § 12–302(a) of the Courts and Judicial Proceedings Article and Md. Rule 8–132 transferred the case to this Court. Thereafter, Morris filed a supplemental petition for certiorari in this Court which was granted.

II

ARFA was enacted by Chapter 695 of the Acts of 1974. Before the Commercial Law Article was enacted, it was codified as Md.Code (1957, 1969 Repl.Vol., 1974 Cum.Supp.), Art. 83, §§ 50 to 52. The present codification of ARFA provides, in pertinent part:

"§ 14–1001. Definitions.

(a) *In general.*—In this subtitle the following words have the meanings indicated.

(b) *Automotive repair facility.*—'Automotive repair facility' means any person who diagnoses or corrects malfunctions of a motor vehicle for financial profit.

(c) *Motor vehicle.*—'Motor vehicle' has the meaning stated in Title 11 of the Transportation Article.

(d) *Person.*—'Person' includes an individual, corporation, business trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity.

"§ 14–1002. Written estimate for repair work.

(a) *Written estimate required; fee.*—(1) Before beginning any repair work on a motor vehicle for which a customer is charged more than $50, an automotive repair facility shall give the customer on his request a written statement which contains:

(i) The estimated completion date; and

(ii) The estimated price for labor and parts necessary to complete the work; and

(iii) The estimated surcharge, if any.

(2) If the fee is disclosed to the customer before the estimate is made, the automotive repair facility may charge a reasonable fee for making the estimate.

(b) *Prohibited charges.*—An automotive repair facility may not charge a customer without his consent any amount which exceeds the written estimate by 10 percent.

"§ 14–1005. Civil action.

This subtitle does not:

(1) Prohibit a person from filing an action for damages against an automotive repair facility; or

(2) Require a person first to exhaust any administrative remedy he may have.

"§ 14–1007.  **Customer complaints.**

Any person aggrieved by a violation of any provision of this subtitle may take any action available under the consumer protection title of this article. ·

"§ 14–1008.  **Repair authorizations.**

(a) *Customer given copy.*—Except as provided in subsection (c) of this section,[3] before beginning any repair work on a motor vehicle, an automotive repair facility shall give the customer a copy of a form used for authorization of repairs which shall inform the customer of the following rights:

(1) That a customer:

(i) May request a written estimate for repairs which cost in excess of $50; and

(ii) May not be charged any amount ten percent in excess of the written estimate without the customer's consent;

(2) That the customer is entitled to the return of any replaced parts except when parts are required to be returned to the manufacturer under a warranty agreement; and

(3) That repairs not originally authorized by the customer may not be charged to the customer without the customer's consent.

(b) *Customer's rights.*—The customer's rights provided in subsection (a) of this section shall be:

(1) displayed immediately before the space for the signature of the customer conspicuously in easily readable type;

(2) Physically separated from the other terms of the form used for authorization of repairs; and

---

**3.**  Subsection (c), which allows for oral notice of customer rights under certain circumstances, is not applicable under the facts of the instant case.

(3) Listed under the printed heading 'Customer's Rights'.

"§ 14–1009. Penalties.

A violation of any provision of this subtitle is an unfair or deceptive practice within the meaning of Title 13 of this article [the CPA] and is subject to the enforcement and penalty provisions contained in Title 13."

The applicable provisions of the CPA provide, in pertinent part:

"§ 13–301. Unfair or deceptive trade practices defined.

Unfair or deceptive trade practices include any:

\* \* \* \* \* \*

"(14) Violation of a provision of:

\* \* \* \* \* \*

"(vi) Title 14, Subtitle 10 of this article, Automotive Repair Facilities[.]

"§ 13–408. Action for damages.

(a) *Actions authorized.*—In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

(b) *Attorney's fees.*—Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees."

A violation of a provision of ARFA is expressly made an unfair or deceptive trade practice which is actionable under the CPA; therefore, if Gregory violated ARFA by refusing to give Morris a written estimate before he began work on her car, then Morris's suit under the CPA was proper.[4]

---

4. We had previously opined that ARFA did *not* require an automotive repair facility to advise a customer of his right to a written estimate *before* work began on the car, *see Design & Funding, Inc. v. Betz Garage, Inc.*, 292 Md. 265, 438 A.2d 1316 (1981); however, that holding was legislatively overruled by Chapter 649 of the Acts of 1985 which amended §§ 14–1002 and 14–1008 "to insure that automotive repair

### III

■ Gregory argues that ARFA does not require a written estimate to be given a customer for automotive *body* work. We disagree.

Section 14–1002(a) provides, in pertinent part:

"(1) Before beginning any repair work on a motor vehicle for which a customer is charged more than $50, an *automotive repair facility* shall give the customer on his request a written statement which contains:

(i) The estimated completion date; and

(ii) The estimated price for labor and parts necessary to complete the work" (emphasis added).

A violation of ARFA is a violation of the CPA.[5] The issue in the instant case, therefore, is whether Gregory is an "automotive repair facility" such that his failure to provide the petitioner with an estimate, under § 14–1002, would be a violation of the CPA.

■ Section 14–1001(b) provides that " '[a]utomotive repair facility' means any person who diagnoses or corrects malfunctions of a motor vehicle for financial profit." A malfunction is "an instance of malfunctioning[.]" *Webster's Third New International Dictionary* 1367 (unabridged 1981). To malfunction is "to function badly or imperfectly: fail to operate in the normal or usual manner ... (the parachute [*malfunction*]ed, opening too late)[.]" *Id.* Morris's motor vehicle was functioning badly because its body was leaking. She took the car to Gregory who diagnosed and corrected that malfunction. Gregory performed those services on the car, not out of the goodness of his heart, but to make a financial profit. Gregory

customers know that they have a right to a written estimate *before* the repair work is done" (emphasis added). Committee Report, House Bill 748, Automotive Repair Facilities, at 2 (1985).

5. Unfair or deceptive trade practices in the sale of consumer services are prohibited by § 13–303 of the CPA. Under § 13–301 of the CPA unfair or deceptive trade practices include any violation of a provision of ARFA. *See supra* part II.

was, therefore, by unambiguous statutory definition, an "automotive repair facility." We find no basis for distinguishing motor work and body work, as the District Court did, for purposes of this statute.

## IV

Alternatively, Gregory asserts that the work done to Morris's car was restoration, not repair, and that restoration work is not covered by the estimate requirements of §§ 14–1002 and 14–1008 even if general body work is. Assuming, *arguendo*, that the work done to the petitioner's car *was* restoration, we see no reason to draw a distinction, in this context, between repair and restoration. The Legislature did not expressly provide for such an exception in ARFA, and we find no evidence of any intent to do so. We have said that "a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature." *Coleman v. State*, 281 Md. 538, 546, 380 A.2d 49, 54 (1977). We will not transgress that rule in this case.

Furthermore, we note that in *Schreiber v. Kelsey*, 62 Cal. App.3d Supp. 45, 133 Cal.Rptr. 508 (1976), a case with facts similar to the facts of the case *sub judice*, the Appellate Department of the Superior Court of California, Los Angeles County, considered and rejected the argument that, under California law,[6] no estimate was required when the work performed was restoration rather than repair. That court found that there was "no evidence that the work done ..., although labeled 'restoration' in [the] brief, was anything other than automotive repair[,]" but that "even if the work performed ... were restoration, rather than repair, it is not expressly exempted from the provisions of [California's law requiring estimates]." *Id.* at 50, 133 Cal.Rptr. at 510.

---

**6.** California's analogue to ARFA provides, in pertinent part, that "[t]he automotive repair dealer shall give to the customer a written estimated price for labor and parts necessary for a specific job." Cal.Bus. & Prof.Code § 9884.9(a) (West 1975 & Supp.1995).

V

■ Therefore, in summary, we hold that a person providing automotive body work for financial profit is included within the ambit of "automotive repair facility" as defined by § 14–1001(b). A body work customer is, therefore, entitled to an estimate under § 14–1002. Furthermore, the restoration of an antique car is not distinguishable, for purposes of ARFA, from body work on any other vehicle, as the Legislature has not provided such an exception.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED AS TO PETITIONER'S CONSUMER PROTECTION CLAIM; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE DISTRICT COURT OF MARYLAND FOR A NEW TRIAL ON THE CONSUMER PROTECTION CLAIM CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENTS.*