775 A.2d 1218

**Allan M. PICKETT**

v.

**SEARS, ROEBUCK & COMPANY.**

**No. 104, Sept. Term, 2000.**

Court of Appeals of Maryland.

July 13, 2001.

Richard M. Winters, Frederick, for petitioner.

Ronald S. Canter and Ronald M. Abramson (Harry K. Wolpoff of Wolpoff & Abramson, L.L.P., on brief) Rockville, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

Appellant, Allan Pickett, (hereinafter "Pickett"), comes before this Court to challenge the constitutionality of substituted service under Maryland Rule 3–121(c) used in a debt collection action brought by appellee, Sears, Roebuck & Company (hereinafter "Sears"). Pickett argues that Sears's service of process, pursuant to an order of the District Court of Maryland, sitting in Carroll County, failed to comport with the requirements of due process under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights.

In the event of an affirmance, Pickett also requests that this case be remanded to the Circuit Court for Howard County for consideration of whether the amount in controversy, as set forth in Md.Code Courts & Judicial Proceedings Article (1974, 1998 Repl.Vol.) § 4–402(e), is sufficient to sustain his demand for a jury trial filed pursuant to Maryland Rule 3–325. We granted certiorari to determine the applicability of the substitute service of process provisions of Maryland Rule 3–121(c) to the facts of this case, and the process by which district and circuit courts should explore the validity of a jury trial demand under Maryland Rule 3–325.

## I. Facts

On July 25, 1995, appellee, Sears, Roebuck & Company, (hereinafter "Sears") filed a debt collection action against appellant, Allan Pickett, in the District Court of Maryland, sitting in Carroll County (hereinafter "Sears action"). The Sears action alleged that Pickett had violated the terms of his consumer credit card agreement with Sears by failing to pay the balance due on his installment account. Pickett had failed to respond to a number of demand letters sent by Sears when it attempted to collect on the account.

Sears filed suit against Pickett for $3,234.52 plus interest and attorneys fees. The District Court issued a summons to be served on Pickett, which Sears sent to Pickett by certified mail, return receipt requested, to his post office box address. The summons was returned unclaimed and a "non-est" return was docketed with the District Court on November 16, 1995.

On July 25, 1996, another summons was issued with service to be completed by August 24, 1996. Sears hired a private process server, Gwin B. Wilt, to effect personal service on Pickett. Wilt attempted personal service of Pickett at his home address at 170 Baughmans Lane in Frederick, Maryland on three occasions: August 13, 1996, at 6:25 pm; August 18, 1996, at 11:15 am; and August 24, 1996, at 10:30 am. To confirm the correct address, Wilt spoke with Constable Stan Michaeleski, who was also attempting service in an unrelated matter. Michaeleski confirmed that 170 Baughmans Lane was a valid address for Pickett; Michaeleski had made more than thirty unsuccessful attempts to serve Pickett in an unrelated matter.

Wilt attempted service in the Sears action again on October 8, 1996, at 5:30 pm, at which time she posted a message on the door regarding the District Court summons. On October 16, 1996, at 5:20 pm, Wilt attempted service for the fifth time, wherein she noted that the message that she had posted on October 8th had been removed. Wilt then posted a second message on the door for Pickett.

Based on the difficulties in obtaining personal service on Pickett, Sears filed a Motion for Service of Process Pursuant to Rule 3–121(c). On December 5, 1996, the District Court granted the motion allowing for substituted service under Rule 3–121(c). The Order specifically stated that service on Pickett was to be made, "by posting a copy of the summons and complaint as near to the Defendant's residence as is practicable and through mailing by the Clerk of the Court a copy of the summons and complaint by way of first class mail, postage prepaid to the Defendant's [Pickett's] last known residence. . . ." The District Court re-issued a writ of summons for Pickett on March 28, 1997. Sears employed a private process server, James C. White, who sent a copy of the summons and complaint to Pickett by first-class mail on March 31, 1997, and posted the summons and complaint at Pickett's residence on April 3, 1997.

On May 16, 1997, Pickett filed a Motion to Quash Service of Process, stating that Sears had failed to acquire *in personam* jurisdiction over him. Pickett alleged that Sears violated Rule 3–126(e)[1] by failing to make a timely return of process including a copy of the process served. The motion also alleged that references in Wilt's affidavit of due diligence submitted to the court as part of Sears's application for an order granting authorization of substituted service contained hearsay statements of Constable Michaeleski, which could not be used to form the basis for granting an order for substituted service under Rule 3–121(c).

On July 14, 1997, a hearing was held on Pickett's motion to quash. Pickett argued that there was insufficient evidence to show that he had been avoiding service making personal service or service by certified mail impossible or impracticable, when the constable's hearsay statements were excluded. Pickett never asserted that he had not received a copy of the summons and complaint.

---

1. Rule 3–126(e), governing the return of process showing proof of service to the court states that, "A return shall include a copy of the process if served and the original process if not served."

At the hearing, Sears tendered the return of service and copy of the process served to the court. In denying Pickett's motion to quash, the court found that the summons and complaint posted at Pickett's residence on April 3, 1997, and the package containing the same documents sent by first class mail on March 31, 1997, qualified as valid service of process pursuant to Rule 3–121(c) to establish *in personam* jurisdiction.

At the end of the July 14, 1997 hearing, Sears agreed to let Pickett have fifteen days within which to file a notice of intention to defend and a request to transfer venue. On July 29, 1997, Pickett filed a Motion for Reconsideration of his motion to quash. The court denied this motion on July 30, 1997.

On August 21, 1997, Pickett filed a notice of intention to defend and a request for a jury trial, thirty-eight days after the trial court's denial of Pickett's motion to quash and twenty-three days after the last day of the extension. On August 26, 1997, Sears filed a motion to strike Pickett's request for a jury trial asserting that Pickett had not made a timely request and that the amount in controversy did not meet the jurisdictional requirements for a jury trial. The trial court struck Pickett's demand for a jury trial stating that the amount in controversy did not exceed $5,000.

Following the trial court's denial of his motion to quash service of process and the striking of his jury demand, Pickett filed a separate action in the form of a Petition for Writ of Certiorari in the Circuit Court for Carroll County, *Allan M. Pickett v. Sears, Roebuck & Co. et al.,* Case No. C–97–25675, against Sears and the District Court of Maryland, sitting in Carroll County (hereinafter "Pickett action").[2] In the Pickett action, Pickett challenged the jurisdiction of the District Court to authorize service of process under Rule 3–121(c), alleging that such service amounted to an unconstitutional violation of

---

2. Pickett voluntarily dismissed Sears from this action prior to a decision by the court.

his due process rights. On January 19, 1999, the Circuit Court for Carroll County denied Pickett's petition, reasoning that the District Court had jurisdiction under Maryland Rule 3–121(c) to order the substituted service in this case, and that Pickett had failed to demonstrate any constitutional violation abrogating such jurisdictional authority. On February 2, 1999, the court entered the order denying the Petition for Writ of Certiorari in the Pickett action. Pickett did not appeal this judgment.[3]

On May 28, 1999, upon Sears's motion, the Sears action was transferred from the District Court sitting in Carroll County to the District Court sitting in Howard County and was set for trial. A trial was held on September 27, 1999. Pickett did not testify at trial, nor did he offer any evidence to refute the records regarding his account as offered into evidence by Sears. The court granted a judgment on the papers for Sears in the amount of $3234.52, plus prejudgment interest of

---

**3.** In his Petition for Writ of Certiorari in the Circuit Court of Carroll County, Pickett raised constitutional arguments concerning the inadequacies of the notice by substitute service which are similar to the arguments he presents now in the case before us. Although the Circuit Court of Carroll County's denial of Pickett's Petition for Writ of Certiorari serves as a final adjudication, *see Ginsberg v. McIntire,* 348 Md. 526, 538, 704 A.2d 1246, 1251 (1998), the Petition for Writ of Certiorari is narrowly tailored to allow a party to challenge the fundamental jurisdiction of a lower court. *See Kawamura v. State,* 299 Md. 276, 283, 473 A.2d 438, 442 (1984); *see also* Maryland Rule 7–301(b). The fundamental jurisdiction of a court is "its power to act with regard to a subject matter which is conferred by the sovereign authority which organizes the court." *Howard v. State,* 76 Md.App. 447, 450, 545 A.2d 705, 707 (1988)(quoting *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980)). Thus, the final adjudication of the circuit court in denying the Petition for Writ of Certiorari was solely on the issue of the District Court's authority under the Maryland Rules to order substitute service pursuant to Rule 3–121(c). *See Kawamura,* 299 Md. at 284, 473 A.2d at 443 (quoting Liebmann, 1 Maryland–Practice District Court Law and Practice at § 91)("It would appear that the jurisdiction of the District Court may be tested by certiorari from the Circuit Court which will issue the writ only when it is alleged and appears prima facie that the inferior tribunal is without jurisdiction."). We abstain from deciding whether the writ was entertained properly in this action; in so doing we will not consider the doctrines of collateral estoppel and res judicata.

$2931.01, attorney's fees of $485.18, and costs of $73.00. Thereafter, Pickett filed a motion to vacate the judgment, which the trial court denied on October 28, 1999.

On November 29, 1999, Pickett appealed the trial court's decision to the Circuit Court for Howard County, which affirmed the decision in favor of Sears.[4] The Circuit Court found that the facts demonstrated a good faith effort by Sears to serve Pickett prior to obtaining the order authorizing substituted service under Rule 3–121(c). The court also reasoned that the validity of service of process would not be affected by Sears's failure to make prompt proof of service pursuant to Maryland Rule 3–126(g).[5] The Circuit Court also found that Pickett failed to file a timely jury trial demand even considering the fifteen day extension period. The Circuit Court agreed with Pickett that the District Court did not have jurisdiction to strike the jury demand on the basis of an insufficient amount in controversy, but it found that the jury demand was untimely and would have been stricken by the District Court on that basis.

Pickett now seeks relief before this Court, pursuant to Maryland Rule 8–302(b), and Code, Cts. & Jud.Proc. § 12–305, and presents the following questions for our consideration:

1. Did the District Court err as a matter of law by ruling that substituted service of process as ordered and effectuated in this case conferred *in personam* jurisdiction upon the court?

2. Did the District Court err as a matter of law in striking Pickett's demand for a jury trial on the basis that the amount in controversy was below the monetary minimum required for a litigant's exercise of that right?

---

4. Appeal filed pursuant to Maryland Rule 7–102, and Code, CJ § 12–401(f).

5. The original order and memorandum opinion of the Circuit Court for Howard County referenced Rule 2–126(g), which is the rule regarding return of service of process in actions commenced in the circuit courts of this state. The language in Rules 2–126(g) and 3–126(g) is identical.

■ We review these questions of jurisdiction pursuant to Rule 8–131(a). Because an interpretation of the Maryland Rules is appropriately classified as a question of law, we review the issue *de novo* to determine if the trial court was legally correct in its rulings on these matters. *See Calomiris v. Woods*, 353 Md. 425, 434, 727 A.2d 358, 362 (1999).

## II. Substituted Service of Process

Pickett argues that the service of process employed in this case pursuant to court order under Maryland Rule 3–121(c) violated the due process rights afforded him by the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. Pickett sets forth several arguments, which we consider in turn, to support his claim that the substituted service ordered by the District Court and executed by a private process server failed to confer *in personam* jurisdiction on the court.

The Fourteenth Amendment of the United States Constitution prohibits States from depriving "any person of life, liberty, or property, without due process of law." Similarly, Article 24 of the Maryland Declaration of Rights states as follows:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Md.Ann.Code, Const. (1958, 1981 Repl.Vol.).[6] This Court has interpreted Article 24 of the Maryland Declaration of Rights and the Due Process clause of the Fourteenth Amendment of the United States Constitution to be *in pari materia*, such that the interpretations of the Due Process clause of the Fourteenth Amendment provided by the United States Supreme Court serve as persuasive authority for Article 24. *See Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052,

---

6. Formerly Article 23 until the amendment of the constitution, ratified November 7, 1978. *See* ch. 681 of the Acts of 1977.

1056 (1980)(citing *Barry Properties v. Fick Bros.*, 277 Md. 15, 22, 353 A.2d 222, 227 (1976); *Bureau of Mines v. George's Creek,* 272 Md. 143, 156, 321 A.2d 748, 755 (1974)).

▮▮▮ In order to properly challenge state action as a violation of procedural due process, the party challenging the action must show that the state acted to deprive the complainant of a property interest encompassed by the language of the due process clause. *See Fuentes v. Shevin,* 407 U.S. 67, 84, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556, 572, *reh'g denied,* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). Where the Court finds that the State action deprived an individual of a protected property interest, the Court must balance the interests of all parties to the matter in order to determine the level of procedural due process which is constitutionally required under the circumstances. *See Golden Sands Club Condominium, Inc. v. Waller,* 313 Md. 484, 496, 545 A.2d 1332, 1338 (1988); *see also Tulsa Prof'l Collection Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565, 574–75 (1988).

Central to Pickett's argument is his assertion that the substituted service of process ordered by the District Court pursuant to Rule 3–121(c) in this case, failed to meet the level of procedural due process required for conveying *in personam* jurisdiction. Pickett claims that the posting of the summons, complaint, and all relevant papers concerning the Sears action at his residence, while sanctioned in Maryland law for *in rem* proceedings, is constitutionally inadequate to convey jurisdiction on the District Court for *in personam* actions. He asserts that in actions where the execution of service involves posting, due process requires that the notice should be left in a conspicuous place which discourages tampering, and which will protect the papers from the elements.

▮▮▮ When interpreting the Maryland Rules, we apply the same principles used in statutory construction. *See Johnson v. State,* 360 Md. 250, 264, 757 A.2d 796, 804 (2000); *Lerman v. Heeman,* 347 Md. 439, 443, 701 A.2d 426, 428 (1997). The principal aim of interpreting the Maryland Rules is to ascer-

tain and effectuate the intention of the drafters. *See Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000). "We should first attempt to ascertain [the Rules Committee's] intent from the statutory language, reading pertinent parts of the [rule's] language together, giving effect to all of those parts if we can, and rendering no part of the [rule] surplusage." *Sinai Hosp. of Baltimore v. Dept. of Employment and Training,* 309 Md. 28, 39–40, 522 A.2d 382, 388 (1987). The words of the rule must also be construed so as not to yield a result which is unreasonable, absurd, or illogical. *See Degren v. State,* 352 Md. 400, 418, 722 A.2d 887, 895–96 (1999). Where the words of the rule are plain and unambiguous, our inquiry ends and we need not look beyond the text of the rule. *See Marsheck v. Bd. of Trustees of the Fire & Police Employees' Ret. Sys. of the City of Baltimore,* 358 Md. 393, 402–03, 749 A.2d 774, 779 (2000); *Long v. State,* 343 Md. 662, 667, 684 A.2d 445, 447 (1996)(quoting *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994)). Even where the language of the rule is plain and unambiguous, however, we may consider "relevant case law and appropriate secondary authority" in order to "place the rule in question in the proper context." *See Johnson v. State,* 360 Md. 250, 265, 757 A.2d 796, 804 (2000).

The basic service of process rule, contained in 3–121(a) authorizes service of process "by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it, or by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: Restricted Delivery—show to whom, date, address of delivery." Rule 3–121(a)(internal quotations omitted). In situations where an individual evades service of process, Rule 3–121(b) provides that:

> When proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the summons, complaint, and all other papers filed with it to the defendant at the defendant's last known residence and delivering a copy of each to a person

of suitable age and discretion at the place of business, dwelling house, or usual place of abode of the defendant.

Maryland's substitute service provision, effective July 1, 1984, and inserted into the rule as subsection (c) states that:

> When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded and that service pursuant to section (b) of this Rule is inapplicable or impracticable, the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice.

Rule 3–121(c).[7] The rule also contains a "disclaimer" provision which states that "[t]he methods of service provided in this Rule are in addition to and not exclusive of any other means of service that may be provided by statute or rule for obtaining jurisdiction over a defendant." Rule 3–121(d).[8]

The language of 3–121(c) contains no provision which prevents a court from designing an order for substituted service to convey *in personam* jurisdiction by using posting as a means of providing notice. Once a litigant has filed an affidavit showing good faith efforts to serve the defendant pursuant to 3–121(a) and that service under 3–121(b) would be

---

**7.** Prior to the enactment of Rule 3–121(c), the Maryland Rules permitted substituted service of process outside the State of Maryland by mailing a copy of both the summons and the original pleading to the defendant's last known residence, and by delivering a copy of the same materials to a person of suitable age and discretion at the defendant's place of business, dwelling house, or usual abode. *See* Former Maryland Rule 107(a)(3). This rule, used when exercising Maryland's long arm statute, had been fashioned after N.Y. Civ. Prac. Law § 308 (McKinney 1963) and Fed.R.Civ.P. 4(d)(1). *See Mooring v. Kaufman,* 297 Md. 342, 350–52, 466 A.2d 872, 876–77 (1983). This language was further refined and adapted into the present version of Rule 3–121(b), which applies to service of process both inside and outside the State of Maryland.

**8.** Md. Rule 3–121 was amended effective October 5, 1999, to omit the language in subsection (b) concerning service of process at a "dwelling house" or "usual place of abode." These changes are immaterial to the matter now before us, because they were not in effect at the time Pickett received service of process.

"inapplicable or impracticable," the court is free to customize a method of service based on the facts and circumstances restricted only by the need to be "reasonably calculated to give actual notice" to the defendant.

This Court has long held that procedural due process requires that litigants must receive notice, and an opportunity to be heard. *See Ulman v. Mayor and City Council of Baltimore,* 72 Md. 587, 591–92, 20 A. 141, 141–42 (1890)(explaining that "notice . . . is required to constitute due process of law" in cases involving a deprivation of a property interest). For "the fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363, 1369 (1914).

Rule 3–121(c) contains the language "reasonably calculated to give actual notice," mirroring the language of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), in embodying the spirit and purpose of procedural due process. In *Mullane,* the Supreme Court made the following pronouncement regarding service of process:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied."

*Id.* at 314–15, 70 S.Ct. at 657, 94 L.Ed. at 873. (internal citations omitted).

The Supreme Court further refined its service of process doctrine in *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). The *Greene* case involved service of process pursuant to a Kentucky statute by posting notice in

forcible entry and detainer actions. *Id.* at 446, 102 S.Ct. at 1876, 72 L.Ed.2d at 252. Justice Brennan, writing for the Court, described the utility of service of process by posting as follows:

It is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention. The frequent restatement of this rule impresses upon the property owner the fact that a failure to maintain watch over his property may have significant legal consequences for him, providing a spur to his attentiveness, and a consequent reinforcement to the empirical foundation of the principle. Upon this understanding, a State may in turn conclude that in most cases, the secure posting of a notice on the property of a person is likely to offer that property owner sufficient warning of the pendency of proceedings possibly affecting his interests.

*Id.* at 451–52, 102 S.Ct. at 1879, 72 L.Ed.2d at 256–57 (internal citations omitted).

The process servers in *Greene,* however, were aware of the fact that there were repeated problems with children removing writs from the doors of the apartment complex where the appellee's resided. *See id.* at 453, n. 7, 102 S.Ct. at 1880, n. 7, 72 L.Ed.2d at 257, n. 7. Under these circumstances, the Supreme Court held that service of process by posting "does not satisfy minimum standards of due process." *See id.* at 453, 102 S.Ct. at 1879, 72 L.Ed.2d at 257. In dicta, the Court did comment that "[n]otice by mail in the circumstances of this case would surely go a long way toward providing the constitutionally required assurance that the State has not allowed its power to be invoked against a person who has had no opportunity to present a defense despite a continuing interest in the resolution of the controversy." *See id.* at 455, 102 S.Ct. at 1880, 72 L.Ed.2d at 258. *See also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180, 188 (1983)("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the

liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.").

We recognize the need for flexibility in the application of due process, for "the process that is due may change according to the circumstances." *Miserandino v. Resort Properties, Inc.*, 345 Md. 43, 65, 691 A.2d 208, 218 (1997). While personal service is the preferred method, Rule 3–121(c) allows the District Courts to customize a method of service for situations where good faith attempts at personal service have been made unsuccessfully and prove futile.

In *Miserandino,* we held that original service of process by first-class mail did not satisfy the constitutional requirements of due process under Maryland law. *Id.* at 56, 691 A.2d at 214. *Miserandino,* however, involved the original effort at service of process pursuant to the Commonwealth of Virginia's long arm statute as applied to defendants residing in Maryland. *See id.* at 52, 691 A.2d at 212.

In the matter now before us, the District Court heeded the caution of the *Greene* case and ordered a two-fold service of process involving posting notice at Pickett's residence and mailing a copy of the same to him through first-class mail, colloquially known as "nail and mail," to inform Pickett of the proceedings instituted against him by Sears. Pickett has presented no such evidence in this case which would inform the Court that posting at his residence would not be reasonably calculated to give him actual notice.

The record shows that Sears made good faith attempts to personally serve Pickett pursuant to the requirements of Rule 3–121(a) and offered proof of its efforts and of the impractical nature of attempting service under Rule 3–121(b) given the circumstances of this case. Furthermore, the District Court order did not sanction service by first-class mail alone; it also required posting at Pickett's residence. While the plain language of Rule 3–121(a) and our holding in *Miserandino* mandate that use of the "nail and mail" procedure for service of process would be insufficient as the primary at-

tempted method of service, where the facts and circumstances warrant substituted service pursuant to Rule 3–121(c), service by "nail and mail" may be ordered by the District Court.

The record in this case fails to support Pickett's arguments concerning the constitutional adequacy of the substituted service of process he received in this case. A proper return of service serves as prima facie evidence of valid service of process. *See Sheehy v. Sheehy*, 250 Md. 181, 185, 242 A.2d 153, 155 (1968). The process server's return was filed at the July 14, 1997 hearing on Pickett's Motion to Quash Service of Process in accordance with Rule 3–126.[9] The return stated that a copy of the summons and complaint had been posted at Pickett's residence at 170 Baughmans Lane, Frederick, Maryland on April 3, 1997, and by mailing a copy of the summons and complaint by first class mail, effective March 31, 1997. At no time during the course of this protracted litigation had Pickett denied that 170 Baughmans Lane was his address. Pickett would have to make more than a mere denial of service of process or a broad assertion that it was invalid in order to rebut the presumptively valid return of process. *See Ashe v. Spears*, 263 Md. 622, 627–28, 284 A.2d 207, 210 (1971) (internal citations omitted).

In weighing the alternative methods of service of process, a court ordering substituted service under Rule 3–121(c) must be careful that the method prescribed in the court order "is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane*, 339 U.S. at 315, 70 S.Ct. at 658, 94 L.Ed. at 874. In the instant case, the District Court was presented with an affidavit

---

9. Rule 3–126(a) states in relevant part that "An individual making service of process by delivery or mailing shall file proof of the service with the court promptly and in any event within the time during which the person served must respond to the process." Although Sears did not file proof of the service until after the time had passed for Pickett's answer to the complaint, the District Court found that the service of process was still effective based on the provision which states, "Failure to make proof of service does not affect the validity of the service." Rule 3–126(g).

documenting the good faith efforts of a private process server to effect personal service on Pickett on at least five separate occasions. Service had also been attempted by certified mail with restricted delivery on two occasions, which was returned unclaimed. Thus, the usual and customary methods of service would not suffice.

Confronted with these facts, the District Court struck a constitutionally sufficient balance between the interests of Sears in obtaining a judgment against Pickett for the debt owed to it on Pickett's consumer credit account and Pickett's right to receive notice and be heard on the issue by ordering service of process by mailing notice and posting at Pickett's residence. *See Golden Sands Club*, 313 Md. at 496, 545 A.2d at 1338. We find, therefore, that the District Court's order for substituted service of process by first-class mail and posting at Pickett's residence was reasonably calculated under the circumstances to apprise Pickett of the action brought against him by Sears. *See Miserandino*, 345 Md. at 53, 691 A.2d at 212; *Golden Sands Club*, 313 Md. at 495–96, 545 A.2d at 1338 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873).

Pickett further argues that even if substituted service by "nail and mail" would be constitutionally sufficient under the circumstances of this case, any substituted service involving posting must be executed by a sheriff or other officer of the court, rather than by a privately employed process server. His argument is based on the historically required use of sheriffs to execute posting for *in rem* proceedings. *See* Rule 2–122(a); *Arnold v. Carafides*, 282 Md. 375, 378–79, 384 A.2d 729, 731 (1978). The plain language of the Maryland Rules regarding substituted service of process and who may serve process, however, impose no such requirement for actions which historically would have been characterized as *in personam* proceedings. *See* Rule 3–121, 3–123.[10]

---

10. Rule 3–123 states as follows:

This Court has held steadfast to the principle that when interpreting rules of procedure or statutes, we are confined to the language as written, such that we cannot and will not supply omissions or remedy possible defects of the statute by inserting exceptions or amendments which were not contemplated by the this Court. *See Graves v. State,* 364 Md. 329, 350, 772 A.2d 1225, 1238 (2001); *Morris v. Gregory,* 339 Md. 191, 199, 661 A.2d 712, 716 (1995); *Wheeler v. State,* 281 Md. 593, 596, 380 A.2d 1052, 1054 (1977). We explained this principle in *Chesapeake Amusements, Inc. v. Riddle,* 363 Md. 16, 766 A.2d 1036 (2001), as follows:

> "Where the statutory language is plain and unambiguous, a court may neither add nor delete language so as to reflect an intent not evidenced in that language, nor may it construe the statute with forced or subtle interpretations that limit or extend its application."

*Id.* at 28–29, 766 A.2d at 1042 (internal citations and quotations omitted).

In his commentary on Rule 2–123, the circuit court equivalent of Rule 3–123, Judge Niemeyer observed:

> Section (a) states the general rule that process can be served by either a sheriff or a competent private person who is eighteen years of age or older, including an attorney of record, but not by a party to the action. This rule effects no substantive change in Maryland practice, but merely combines several former rules. Although the new rule

---

(a) Generally. Service of process may be made by a sheriff or, except as otherwise provided in this Rule, by a competent private person, 18 years of age or older, including an attorney of record, but not by a party to the action.

(b) Sheriff. All process requiring execution other than delivery, mailing, or publication shall be executed by the sheriff of the county where execution takes place, unless the court orders otherwise.

(c) Elisor. When the sheriff is a party to or interested in an action so as to be disqualified from serving or executing process, the court, on application of any interested party, may appoint an elisor to serve or execute the process. The appointment shall be in writing, signed by a judge, and filed with the clerk issuing the process. The elisor has the same power as the sheriff to serve or execute the process for which the elisor was appointed and is entitled to the same fees.

eliminates the wording in Former Rule 116a that "the person shall have the same power and duty to execute such process as the sheriff," that power would seem to be implied.

Section (b) limits section (a) by restricting service by a private person to cases in which process is simply to be delivered, mailed, or published. Consequently, writs of execution, replevin, or attachment of property or person must still be served by the sheriff. Unlike the former rule, the new rule explicitly authorizes the court to order service by a private person when service by the sheriff would otherwise be required.

Paul V. Niemeyer, *Commentary on the New Maryland Rules of Civil Procedure*, 43 Md.L.Rev. 669, 719 (1984).

The District Court was not restricted to ordering the service of process to be executed by a sheriff, because the Sears action did not involve a writ of execution, replevin, or attachment of property or person. The District Court's order in this case did not specify by whom the service should be executed. Under the facts of this case, Sears's selection of a private process server to execute the posting and mailing of the notice falls within the parameters of the general service provision of Rule 3–121(a), which covers *in personam* actions. Thus, we find no error in the District Court's decision to give Sears the discretion to employ a private process server in its order directing substituted service of process.

■ Finally, Pickett "respectfully suggests that based upon the affidavit attached to [Sears's] motion for substituted service, [Sears] should have been required to effectuate service of process under Rule 3–121(b), inasmuch as [Sears] clearly had alleged facts which indicated that [Pickett] was attempting to evade service." (Pet. Brief at 25). The various sub-parts of Rule 3–121, however, do not require that an individual actually attempt service by the modified service requirements set forth in subsection (b) prior to setting forth facts in an affidavit to the court that service pursuant to that subsection would be "inapplicable or impracticable." Pickett

has admitted to evading service of process in this action, as he asserted that the process server's affidavit of good faith "clearly establishes that Appellant was evading service." He suggests that the Maryland Rules be interpreted to include requirements which the Court did not see fit to include in the language as enacted simply to provide additional obstacles for his creditors seeking judicial relief.

■ As the Supreme Court explained in *Mullane*, "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." 339 U.S. at 313–14, 70 S.Ct. at 657, 94 L.Ed. at 873 (1950). We conclude, therefore, that the substitute service of process ordered by the District Court in this case was "reasonably calculated to give actual notice" to Pickett of the action brought against him by Sears.

### III. Untimely Jury Demand

■ We now consider Pickett's appeal of the Circuit Court for Howard County's decision which sanctioned the striking of his jury demand by the District Court. The record shows that on July 14, 1997, the District Court denied Pickett's motion to quash service. At that time, Sears agreed to a fifteen day extension of time for Picket to file his notice of intent to defend in accordance with Rule 3–307,[11] such that Pickett would have needed to file his notice of intention to defend no

---

11. Rule 3–307 provides in relevant part:

(a) To Be Filed With Court—Service Not Required. The defendant . . . shall file with the court a notice of intention to defend which may include any explanation or ground of defense . . .

(b) Time for Filing. The notice shall be filed within 15 days after service of the complaint . . .

(e) Effect of Failure to File Notice. If a defendant fails to file a timely notice of intention to defend pursuant to this Rule, the court, on the date set for trial, may determine liability and assess damages based on ex parte proof by the plaintiff, unless the defendant appears and the court is satisfied that the defendant may have a defense to the claim. In that event, the court shall proceed with trial or, upon request of the plaintiff, may grant a continuance for a time sufficient to allow the plaintiff to prepare for trial on the merits.

later than July 29, 1997, and any demand for a jury trial no later than August 8, 1997.

Instead, on July 29, 1997, Pickett filed a motion asking the District Court to reconsider its denial of his motion to quash service of process. The District Court denied the motion for reconsideration on July 30, 1997. Pickett filed both his notice of intention to defend and his demand for a jury trial on August 21, 1997. In response, Sears filed a motion to strike the jury demand as untimely filed and failing to meet the amount in controversy threshold for a jury trial. On August 28, 1997, the trial court struck Pickett's jury trial demand with a notation stating "Stricken—amount in controversy does not exceed $5,000." Pickett asserts that, according to Maryland Rule 3–325(c), the District Court did not have authority to strike a jury demand for failure to meet the amount in controversy requirement.

The District Court has exclusive original civil jurisdiction over contract actions where the debt or damages at issue does not exceed $25,000, exclusive of interest, costs and attorney's fees if applicable. *See* Code, Cts. & Jud. Proc. § 4–401(1) (1973, 1998 Repl.Vol.). All actions tried in the District Court of Maryland are tried without a jury. In order to secure a jury trial, Pickett, like any other litigant, would have to file a timely jury trial demand.

The right to a trial by jury in Maryland is established in Articles 5 and 23 of the Maryland Declaration of Rights. The origins of the jury trial right in Maryland are as follows:

> That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity . . .

Article 5 of the Declaration of Rights. At the time Sears commenced this litigation against Pickett, Article 23 of the

Maryland Declaration of Rights provided in relevant part as follows:

> The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five thousand dollars, shall be inviolably preserved.[12]

This Court historically anticipated the need for the development of rules and statutory provisions which would preserve the constitutional right to a jury trial "while sustaining all reasonable regulations of the exercise of that right made in the interest of the general public." *Knee v. Baltimore Passenger Ry. Co.*, 87 Md. 623, 627, 40 A. 890, 892 (1898).

The framework for the invocation of a jury trial is found in § 4–402(e) of the Courts and Judicial Proceedings Article and Maryland Rule 3–325. At the time Sears commenced its action against Pickett, § 4–402(e) provided in relevant part as follows:

> *Jury trial.*—(1) In a civil action in which the amount in controversy exceeds $5,000, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may demand a jury trial pursuant to the Maryland Rules.
> (2) Except in a replevin action, if a party is entitled to and files a timely demand, in accordance with the Maryland Rules, for a jury trial, jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court ...

Code, Cts. & Jud. Proc. § 4–402(e) (1973, 1998 Repl.Vol.).[13] Maryland Rule 3–325(1999), which sets forth the requirements and procedures for demanding a jury trial under the provisions of § 4–402(e), provides as follows:

---

**12.** Article 23 of the Maryland Declaration of Rights was amended in 1998 to raise the jurisdictional amount in controversy requirement to $10,000. *See* 1998 Md. Laws, ch. 322.

**13.** Section 4–402(e) was amended by Chapter 34, Acts of 1999, to raise the amount in controversy requirement to $10,000. This amendment went into effect on April 13, 1999, after the commencement of this litigation.

(a) Demand Time—for Filing.

(1) *By Plaintiff.* A plaintiff whose claim is within the exclusive jurisdiction of the District Court may elect a trial by jury of any action triable of right by a jury by filing with the complaint a separate written demand therefor.

(2) *By Defendant.* A defendant, counter-defendant, cross-defendant, or third-party defendant may elect a trial by jury of any action triable of right by a jury by filing a separate written demand therefor within ten days after the time for filing a notice of intention to defend.

(b) Waiver. The failure of a party to file the demand as provided in section (a) of this Rule constitutes a waiver of trial by jury of the action for all purposes, including trial on appeal.

(c) Transmittal of Record to Circuit Court. When a timely demand for jury trial is filed, the clerk shall transmit the record to the circuit court within 15 days. At any time before the record is transmitted pursuant to this section, the District Court may determine, on its own initiative or on motion of a party, that the demand for jury trial was not timely filed.

A party demanding the jury trial need not file a second demand in the Circuit Court after filing a timely demand in the District Court. *See* Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 75 (2nd ed.1992, 2000 Supp.).

This Court has previously held that where a party is entitled to a jury trial under the terms of § 4–402(e), and a demand for a jury trial has been made, "the demand itself divests the District Court of jurisdiction as a matter of law and immediately vests jurisdiction in the circuit court." *Vogel v. Grant,* 300 Md. 690, 696, 481 A.2d 186, 189 (1984). The *Vogel* case involved the timely filing of a jury demand in a contract action brought under the original jurisdiction of the District Court. *Id.* at 692, 481 A.2d at 187. Upon receipt and entry in the docket of defendant's timely jury demand, the District Court transferred the case to the Circuit Court for

Montgomery County. *Id.* at 693, 481 A.2d at 187. After the record had been transmitted to the Circuit Court, the plaintiff attempted to challenge the jury demand on the basis that it was not a "separate writing" as required by former Maryland District Rule 343, and did not "bear a certificate of service" pursuant to former Maryland District Rule 306. *Id.* We explained the process for evaluating the validity of jury trial demands as follows:

> [A]s the statute and cases make clear, when a party has a right to a jury trial and files a demand, jurisdiction over the case is immediately vested in the circuit court. If another party believes that there was a procedural defect, which results in a waiver of the jury trial right, or which otherwise should deprive the demandant of a jury trial, his recourse is to file a motion *in the circuit court.* If the movant's procedural objection to the jury trial is well-taken, the circuit court will then remand the case to the District Court for a nonjury trial. Nevertheless, as long as it is the type of case to which the jury trial right attaches and a jury trial is demanded, it is normally the circuit courts, and not the District Court, which have jurisdiction over a motion opposing a jury trial because of an alleged procedural defect.

*Id.* at 697–98, 481 A.2d at 189–90. As a result, the *Vogel* Court held that a violation of one of the procedural requirements, such as the requirement that the jury demand be filed in a separate writing, does not give the District Court the ability to retain jurisdiction over a case where the litigants were entitled to a jury trial and filed a timely demand. *Id.* at 699–700, 481 A.2d at 190–91.

When this Court decided *Vogel* the language of § 4–402(e)(2) regarding jury trials for non-replevin actions simply read, "if a party is entitled to and demands a jury trial, jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court." Cts. & Jud. Proc. § 4–402(e)(2) (1974, 1984 Repl.Vol.). Recognizing the need for clarity in defining the jurisdiction of the trial courts when considering demands for jury trials, the General Assembly amended and reenacted § 4–402(e)(2) in

1985 to read, as it does today, "if a party is entitled to and files a timely demand, in accordance with the Maryland Rules, for a jury trial, jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court." 1985 Md. Laws, ch. 3. The General Assembly specifically found it necessary to take this "emergency measure" in order to make it clear that "in a civil action, a demand for a jury trial must be filed in a timely manner" in order to divest the District Court of its jurisdiction to hear a case for which it has original jurisdiction. *Id.*

There can be no doubt that the essential language of § 4–402(e) which triggers the divestment of the District Court's jurisdiction to hear the case, is "if a party is *entitled to and files a timely demand,* in accordance with the Maryland Rules . . . ." § 4–402(e)(2)(emphasis added). The language of Maryland Rule 3–325(c) gives the District Court a fifteen-day window of opportunity to examine the timeliness of the jury trial demand *sua sponte* or as requested by motion of a party prior to transmitting the record to the Circuit Court. Thus, while Rule 3–325(c) makes no provision for the District Court to evaluate the "amount in controversy" prong of the jury trial demand, the District Court maintains the ability to strike the demand as untimely filed until the record has been transmitted to the Circuit Court. *See Dallas v. Envtl. Health Assoc., Ltd.,* 77 Md.App. 350, 356, 550 A.2d 422, 425 (1988)(finding that subsection (c) of Rule 3–325 "provides an exception" to the general rule that the circuit courts evaluate the validity of jury demands and allows the District Court to consider the validity of the demand "in the circumstance where the claimed procedural defect in the jury trial demand is the untimeliness of the demand").

In District Court practice, the timing for a defendant to file a jury demand is inextricably linked to the defendant's filing of the notice of intention to defend. Maryland Rule 3–307 sets forth the requirement that defendants must file a notice of intention to defend an action within fifteen days after service of the original pleading or else risk having a default

94

judgment entered against them on the basis of ex parte proof of liability and damages as presented to the court by the plaintiff. A jury trial demand must be filed within ten days after the time for filing the notice of intention to defend. Md. Rule 3–325(a)(2). A defendant may challenge the sufficiency of service of process afforded him under the facts of the case by including "any explanation or ground of defense" within the notice of intention to defend. Md. Rule 3–307(a). Therefore, Pickett, unlike the Hobbesean choice he portrays, could have challenged the sufficiency of service of process in his notice of intention to defend.

 Under the facts of this case, where the District Court determined that service of process was effective to convey personal jurisdiction over Pickett as of April 3, 1997, Pickett would have had to file his jury demand by April 28, 1997. Pickett's first appearance in the matter, however, did not take place until May 16, 1997, when he filed his motion to quash service of process. While the entry of an appearance does not waive the litigant's right to assert any available defenses under the Maryland Rules, it also does not toll the period for filing a notice of intention to defend or jury trial demand. *See* Md. Rule 3–131(c)(1999).[14] Despite the untimely nature of its filing, the District Court elected to hear Pickett's Motion to Quash Service of Process on July 14, 1997. At that time, the District Court denied Pickett's motion and provided Pickett with a fifteen-day grace period in which to file a notice of intention to defend and/or a motion to transfer venue. The District Court did not extend to Pickett the option of filing a motion for reconsideration, nor did the court express that the filing of any pleadings other than a notice of intention to defend or motion to transfer venue would toll the fifteen-day extension period. Thus, under the extension provided by the District Court, Pickett should have filed his notice of intention

---

**14.** The Maryland Rules of Civil Procedure for District Court practice do not contain any provisions comparable to the Circuit Court Rules 2–321(c), which gives parties an automatic extension for filing an answer when a party files a preliminary motion pursuant to Rule 2–322.

to defend no later than July 29, 1997, and his demand for a trial by jury no later than August 8, 1997.

 The District Court did not have authority to strike Pickett's demand for a jury trial on the basis that the amount in controversy did not exceed $5,000. Notwithstanding that fact, the District Court should have stricken the demand as untimely filed. We agree with the Circuit Court of Howard County that under the facts of this case, Pickett's demand for a jury trial was both untimely filed and failed to meet the amount in controversy requirement.

For the foregoing reasons, we affirm the Circuit Court's decision denying Pickett's demand for a jury trial as untimely when filed with the District Court on August 21, 1997.

*JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPEL- LANT.*